UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ANSTEAD,

              Plaintiff,

    v.

VIRGINIA MASON MEDICAL CENTER,
*et al.*,

              Defendants.

CASE NO. 2:21-cv-00447-JCC-JRC

ORDER ON DEFENDANTS'
MOTION FOR PROTECTIVE
ORDER AND/OR TO QUASH
PLAINTIFF'S THIRD-PARTY
SUBPOENAS

This matter is before the Court on referral from the district court (Dkt. 11) and on defendants' motion for a protective order and/or to quash plaintiff's third-party subpoenas. Dkt. 28.

In this employment dispute, plaintiff propounded six subpoenas to third parties, seeking information to support her claims of discrimination and retaliation. Defendants ask the Court to step in to resolve the parties' dispute over whether plaintiff is entitled to certain documents she seeks via the subpoenas. Specifically, defendants argue that Ms. Amy Efroymson and her employer, Avitus Group, should not be required to provide documents protected by attorney-

ORDER ON DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND/OR TO QUASH
PLAINTIFF'S THIRD-PARTY SUBPOENAS - 1

1   client privilege. They also argue that the subpoenas seek irrelevant information and are unduly

2   burdensome.

3       The Court concludes that Ms. Efroymson and her employer, who were contracted by

4   defendants to provide human resources services, were the functional equivalent of defendants'

5   agents, such that any communications between them and defendants' attorneys—for the purpose

6   of seeking or receiving legal advice—is protected by the attorney-client privilege. However,

7   while the Court concludes that defendants have standing to assert the attorney client privilege on

8   behalf of their agents, defendants lack standing to challenge the subpoenas on the basis that they

9   are irrelevant, overbroad, duplicative, or unduly burdensome. Therefore, defendants' motion is

10  granted in part and denied in part.

## BACKGROUND

12      Plaintiff initiated this action on April 2, 2021 when she filed a complaint alleging that

13  defendants violated her rights under the Family and Medical Leave Act, Washington Law

14  Against Discrimination, the Americans with Disabilities Act, Title VII, and Washington's Equal

15  Pay and Opportunities Act. Dkt. 1 at 5–9. Plaintiff alleges that defendants discharged her or

16  "otherwise limited her employment opportunities based on discriminatory motivations, including

17  exaggerated fears and discomfort about [p]laintiff's disability and unfounded assumptions about

18  how [her] disability would impact her work performance." *Id.* at 6.

19      The parties have engaged in substantial discovery. *See* Dkt. 29 at 2. However, the parties

20  disagree as to whether plaintiff is entitled to discovery concerning documents within the control

21  of the following third parties: Amy Efroymson, Avitus Group, Matrix Absence Management,

22  Unum, Marianne Fehrenbacher, and Lippincott Consulting. Dkts. 29-2, 29-3. Having met and

23

24

1    conferred without resolving their disagreement, plaintiff served the six subpoenas on the third

2    parties in March 2022. *See* Dkt. 29-1.

3         On March 23, 2022, defendants filed a motion for protective order and/or to quash

4    plaintiff's subpoenas. Dkt. 28. The motion has been fully briefed. *See* Dkts. 28, 31, 33.

5                                              **DISCUSSION**

6         Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), the Court must quash or

7    modify a subpoena if it requires disclosure of privileged or other protected matter. Defendants

8    move the Court for a protective order or to quash plaintiff's subpoenas because two of them seek

9    privileged information and because all six seek information that is unduly burdensome and

10   irrelevant. Dkt. 28 at 6.

11   **I.        Attorney-Client Privilege**

12        The federal common law of attorney-client privilege applies to federal claims, while state

13   law concerning privilege governs as to claims or defenses for which state law provides the rule

14   of decision. Fed. R. Evid. 501. Here, plaintiff asserts both federal and state law claims. *See* Dkt.

15   1 at 5–9.

16        "The attorney-client privilege protects confidential communications between attorneys

17   and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina*

18   *Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citations omitted). "[A] party asserting the attorney-

19   client privilege has the burden of establishing the [existence of an attorney-client]

20   relationship *and* the privileged nature of the communication." *United States v. Ruehle,* 583 F.3d

21   600, 607 (9th Cir. 2009) (citation omitted). "Because it impedes full and free discovery of the

22   truth, the attorney-client privilege is strictly construed." *Id.*

23

24

1    In the Ninth Circuit, courts use the following eight-part test to determine whether

2    information is protected by the attorney-client privilege:

3        (1) Where legal advice of any kind is sought (2) from a professional legal adviser
         in his capacity as such, (3) the communications relating to that purpose, (4) made
4        in confidence (5) by the client, (6) are at his instance permanently protected (7)
         from disclosure by himself or by the legal adviser, (8) unless the protection be
5        waived.

6    *Sanmina*, 968 F.3d at 1116 (quoting *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). The first

7    and fifth elements are implicated in defendants' motion.

8                **A.  Whether the communication was for the purpose of seeking legal advice**

9        Defendants argue that Ms. Efroymson and her employer, Avitus Group, who were

10   contracted by defendants to engage in the interactive process with plaintiff concerning her

11   reasonable accommodation request, engaged in privileged communications with defendants'

12   attorneys. According to defendants' counsel, Devin Smith, "[Ms.] Efroymson obtained legal

13   advice regarding [defendants'] legal obligations in providing reasonable accommodations for

14   [plaintiff] and ways to engage in the interactive process that fulfilled [defendants'] legal

15   obligations." Dkt. 29 at 1–2. In response, plaintiff argues that because Ms. Fehrenbacher testified

16   in her deposition that she did not seek legal advice from anyone while she worked with plaintiff,

17   Ms. Efroymson, who succeeded Ms. Fehrenbacher in working with plaintiff, must have done the

18   same. *See* Dkt. 31 at 4–5, 9. Plaintiff also argues that the mere involvement of attorneys in

19   communications does not make them privileged communications. *Id.* at 9.

20       The Court is not persuaded by plaintiff's arguments in light of Mr. Smith's declaration, as

21   well as the declaration from Ms. Efroymson, in which she states that she "regularly engaged with

22   [defendants'] legal counsel in order to obtain legal guidance and advice regarding the interactive

23   process with [plaintiff]." Dkt. 34 at 2. Therefore, defendants have met their burden to establish

24

1    that certain communications between Ms. Efroymson and by extension her employer, Avitus

2    Group, were for the purpose of seeking legal advice.

3                    **B.  Whether Efroymson and Avitus Group were "clients"**

4            Defendants argue that Efroymson and Avitus were defendants' agents because they acted

5    on defendants' behalf "for the purposes of engaging in the interactive process with [plaintiff]."

6    Dkt. 28 at 7. Plaintiff presents a cursory challenge to this assertion by alleging that Ms.

7    Efroymson was not defendants' employee and was merely contracted to "shepherd employees

8    through the accommodation process." Dkt. 31 at 4-5.

9            In *U.S. v. Graf*, the Ninth Circuit answered the question of whether an outside

10   consultant's communication with corporate counsel fell within the corporation's attorney-client

11   privilege. 610 F.3d at 1156. It held that the privilege applies where the consultant is the

12   functional equivalent of a corporate employee. *Id.* at 1158–59. The Court concluded that the

13   consultant in that case was a functional employee because he communicated with insurance

14   brokers and agents on behalf of the company, managed company employees, and communicated

15   with corporate counsel. *Id.* at 1158.

16           Here, Ms. Efroymson and her employer, Avitus Group, were contracted by defendants to

17   provide human resources services on their behalf. Specifically, Ms. Efroymson was contracted to

18   "participate in the interactive process with [defendants'] employees to help [defendants] comply

19   with disability laws . . . ." Dkt. 34 at 2. According to Ms. Efroymson, she had regular

20   communications with defendants' in-house counsel and outside counsel to ensure that defendants

21   were meeting their legal obligations with respect to plaintiff's accommodations request. *Id.* In

22   this context, Ms. Efroymson and her employer, Avitus Group, were functionally equivalent to

23   defendants' employees. Therefore, any communications concerning legal advice are privileged.

24

1        ## II.        Relevancy and Undue Burden

2            Defendants argue that certain requests present in all six subpoenas propounded on the

3    third parties are improper because they cause an undue burden and "have no bearing on the

4    claims or defenses in this case." Dkt. 28 at 8–9. Specifically, defendants take issue with plaintiff

5    seeking documents regarding "the accommodation process or job analysis performed or

6    requested for any physician employed by [defendants] from January 1, 2017 to June 6, 2020."

7    *See, e.g.*, Dkt. 29-1 at 7. Plaintiff also seeks "[d]ocuments which refer or relate to the scope of

8    services, guidelines, policies or practices with respect to accommodation leaves of absence"

9    which the subpoena recipients used or relied upon in their work "for any clients or for

10   [defendants], between January 1, 2017 and June 6, 2020." *Id.*

11           Plaintiff suggests that defendants may not have standing to challenge her subpoenas on

12   these grounds. *See* Dkt. 31 at 10, n.7. Indeed, defendants claim that they could not produce these

13   documents because they did not have "custody and control" over the documents yet claim that

14   production of those documents would be unduly burdensome. *See* Dkt. 31 at 6. Notably, none of

15   the third parties have challenged the subpoenas themselves and defendants do not specifically

16   address whether they have standing. "Ordinarily a party has no standing to seek to quash a

17   subpoena issued to someone who is not a party to the action, unless the objecting party claims

18   some personal right or privilege with regard to the documents sought." *Crispin v. Christian*

19   *Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010) (internal quotations and citations

20   omitted). This Court agrees with other district courts in the Ninth Circuit that a party generally

21   lacks standing to object to a subpoena served on a third party on grounds of relevance or undue

22   burden. *See Tater v. City of Huntington Beach*, No. 8:20-cv-01772-JVS, 2021 WL 4735015, at

23   *3 (C.D. Cal. June 7, 2021) ("Plaintiff's contentions that the Subpoenas seek irrelevant

24

information and are overly broad do not provide her standing to quash the Subpoenas."); *Lee v. Lee*, No. CV 19-8814 JAK, 2020 WL 7890868, at *5 (C.D. Cal. Oct. 1, 2020) ("[O]nly the party to which the subpoena is directed has standing to object to the requests on the grounds that they are irrelevant, vague, overbroad, duplicative, unduly burdensome, etc."). Therefore, the Court concludes that defendants do not have standing to challenge the subpoenas on these grounds.

Even if they had standing, the Court disagrees that the documents plaintiff seeks are irrelevant and notes that the stipulated protective order contemplates the production of such information. *See* Dkt. 20. Defendants do not say why the protective order they agreed to is insufficient to protect the other physicians. In fact, defendants appear to suggest that it will. *See* Dkt. 28 at 9 ("Even if this information were produced confidentially, it would not change the fact that the information is impermissibly invasive, not relevant to the alleged claims, and not proportional to the needs of the case.").

## CONCLUSION

Defendants' motion is granted in part and denied in part. Specifically, the motion to quash the subpoenas is granted to the extent the subpoenas require production of privileged communications involving Ms. Efroymson or Avitus Group. Defendants' motion is denied in all other respects. Because the Court grants in part and denies in part defendants' motion, the Court denies defendants' request for fees and costs in bringing the motion. Each party shall bear their own fees and costs.

Dated this 20th day of April, 2022.

J. Richard Creatura
Chief United States Magistrate Judge