UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ANSTEAD,

            Plaintiff,

    v.

VIRGINIA MASON MEDICAL CENTER, *et al.*,

            Defendants.

CASE NO. 2:21-cv-00447-JCC-JRC

ORDER ON MOTION FOR PROTECTIVE ORDER

This matter is before the Court on defendants' motion for a protective order related to plaintiff's Federal Rule of Civil Procedure 30(b)(6) notice of deposition of defendant Virginia Mason Medical Center ("VMMC"). Dkt. 37. Defendants assert that the noticed topics are overbroad and unduly burdensome. The Court agrees in part and limits the scope of the Rule 30(b)(6) deposition as set forth below, although the Court will allow, among other things, questioning about the discovery process, over defendants' objection. The motion for a protective order (Dkt. 37) is granted in part and denied in part.

*///*

**BACKGROUND**

Plaintiff, an otolaryngologist,[1] sues her former employers related to events that allegedly occurred when she took medical leave to care for her child beginning in October 2018 and extended that leave for her own medical condition—a series of events that culminated with defendants terminating her employment. *See* Dkt. 1. She alleges that during her employment, she and other female physicians were subjected to disparate treatment compared to defendants' other, male physicians and that defendants initially gave her medical leave, but then retaliated against her for taking her leave and for seeking reasonable accommodations for her own disability. *See generally* Dkt. 1. She also alleges that she was subjected to requirements for her return to work that other, male physicians did not have to comply with. Dkt. 1, at 4.

Based on these allegations, she claims violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, asserting after she took leave under the FMLA, defendants failed to reinstate her in a substantially equivalent position and retaliated against her by taking actions including terminating her employment. Dkt. 1, at 4–5. She also alleges that she is disabled under the Washington Law Against Discrimination ("WLAD"), ch. 49.60 RCW, and the Americans with Disabilities Act, 42 U.S.C. § 12101, and alleges that defendants failed to accommodate her return from medical leave, discriminated against her on the basis of her disability by taking actions including terminating her employment, and retaliated against her. Dkt. 1, at 5–6. Further, she alleges that defendants violated WLAD, RCW 49.58.020, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, when they discharged her from

---

[1] "Otolaryngology" is a "a medical specialty concerned especially with the ear, nose, and throat and related parts of the head and neck." Otolaryngology, *Merriam-Webster's Online Dictionary* (last visited May 20, 2022), https://www.merriam-webster.com/dictionary/otolaryngology.

1    employment, otherwise limited her employment on the basis of her gender, and retaliated against

2    her.  Dkt. 1, at 7.

3            Currently, this matter is set for trial beginning February 13, 2023, with discovery to be

4    completed by September 7, 2022.  Dkt. 25.  On January 27, 2022, plaintiff served a Federal Rule

5    of Civil Procedure 30(b)(6) notice, stating that she intended to take the deposition of defendant

6    Virginia Mason Medical Center through its designated representative(s).  Dkt. 38-1, at 1.

7            Relevant to this matter, the deposition notice defined "you" to include not only

8    defendants but "anyone acting or purporting to act on their behalf" and defined the relevant

9    period as beginning January 1, 2016.  Dkt. 38-1, at 5.  The notice also set forth the areas of

10   examination and, for each area, stated that the deponent had to identify and authenticate "all

11   documents relating to this topic, as well as to identify the completeness of documents produced;

12   the scope, nature, and method of search by you; and the existence, location, organization,

13   electronic creation, duplication, and/or storage of such documents."  *See* Dkt. 38-1, at 5–6

14   (internal formatting omitted).

15           The first area of examination sought policies, procedures, practices, and trainings related

16   to "implicit bias, complaints of gender or disability discrimination, harassment, or retaliation

17   which [sic] were in effect during the relevant period."  Dkt. 38-1, at 5–6 (internal formatting

18   omitted).  Areas 1, 2, 5, 6, and 11 also referenced "policies" and "practices" from defendants'

19   entire organizations, rather than being limited to plaintiff's particular department.  *See* Dkt. 38-1,

20   at 5–6.

21           Defendants responded to the notice by objecting to the language identified above.  *See*

22   Dkt. 38-2, at 2–5.  Plaintiff declined to change her notice, except that she agreed to strike the

23

24

1    language requiring testimony about the "completeness of documents produced." *See* Dkt. 38-3,

2    at 3.

3          The parties discussed these matters via telephone on March 18, 2022, but on March 23,

4    2022, plaintiff indicated that she would make only one concession—narrowing the date range for

5    areas 4, 5, 10, and 11, but not agreeing to narrow the date range for the remainder of the topics to

6    the extent that defendants requested. *See* Dkt. 38, at 2.  Further conferral was unsuccessful.  Dkt.

7    38, at 3.  Moreover, plaintiff's amended deposition notice, which she served on April 18, 2022,

8    did not remove the "completeness of documents produced" or narrow the date ranges as plaintiff

9    had agreed.  *See* Dkt. 38-6, at 5–10.

10         Defendants now seek a protective order regarding these issues.  The parties have met and

11   conferred, and the motion is ripe for consideration.

12                                    **DISCUSSION**

13   **I.  Legal Standard**

14         "A party . . . from whom discovery is sought may move for a protective order[.]"  Fed. R.

15   Civ. P. 26(c)(1).  "The court may, for good cause, issue an order to protect a party . . . from

16   annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c)(1).

17   Deposition topics are subject to Rule 26's general requirement that the scope of discovery is

18   limited to—

19            any nonprivileged matter that is relevant to any party's claim or defense and
             proportional to the needs of the case, considering the importance of the issues at
20           stake in the action, the amount in controversy, the parties' relative access to relevant
             information, the parties' resources, the importance of the discovery in resolving the
21           issues, and whether the burden or expense of the proposed discovery outweighs its
             likely benefit.
22   Fed. R. Civ. P. 26(b)(1).

23

24

ORDER ON MOTION FOR PROTECTIVE ORDER - 4

1    In addition, Rule 30, governing depositions by oral examination, requires that a

2    deposition notice directed to an organization identify the matters for examination "with

3    reasonable particularity."  Fed. R. Civ. P. 30(b)(6).  Rule 30(b)(6) is a "powerful and important

4    discovery tool" because it allows a party to obtain sworn admissions that are binding on an

5    organization.  *Hosseinzadeh v. Bellevue Park Homeowners Ass'n*, No. C18-1385-JCC, 2020 WL

6    4901674, at *3 (W.D. Wash. Aug. 20, 2020).

7    **II.  Limitations to Areas 1, 2, 5, 6, and 11**

8        Defendants argue that areas 1, 2, 5, 6, and 11 are overbroad because they effectively seek

9    information from across defendants' entire healthcare organization, rather than focusing on

10   plaintiff's own department or management hierarchy.  Dkt. 37, at 10.  They also argue that

11   testimony about organizational practices related to implicit bias and harassment is irrelevant.  *See*

12   Dkt. 37, at 11.  The Court agrees in part, generally limits these topics to matters affecting

13   physicians working for defendants, and strikes the language about harassment.

14       The areas of examination that defendants object to on this basis can be summarized as

15   seeking, organization-wide, (1) defendants' policies, procedures, practices, and trainings about

16   implicit bias and complaints of gender or disability discrimination, harassment, or retaliation

17   during the relevant period, (2) defendants' policies, procedures, practices, and trainings related to

18   employee accommodations and FMLA leave, (5) defendants' policies, procedures, practices, and

19   trainings related to identifying and responding to compensation differentials between different

20   genders, (6) complaints to defendants by their physician employees of discrimination, failure to

21   accommodate, or retaliation, and (11) defendants' policies, procedures, practices, and trainings

22   about their communications to employees, patients, and others and the application of those

23   policies to plaintiff.  *See generally* Dkt. 38-6.

24

1    Defendants assert that these inquiries relate to "thousands of employees across more than

2    100 different service specialties and numerous departments." Dkt. 37, at 10; *see also* Dkt. 1, at 2

3    (alleging that defendant Virginia Mason Medical Center operates ten clinics and hospitals in

4    Washington and employs more than 5,500 people, over 500 of whom are physicians). They also

5    assert that specifically, topics 5 and 6 seek confidential, proprietary, and sensitive third-party

6    information. Dkt. 37, at 11.

7    In response, plaintiff asserts that she is entitled to discovery into how comparators were

8    treated across the organization, not just in her department. *See* Dkt. 39, at 12–13. Plaintiff

9    points to case law that she can use evidence of similarly situated employees' treatment to

10   establish disparate treatment discrimination, where employees have similar jobs and display

11   similar conduct. *See* Dkt. 39, at 9. But she has not shown that information about policies,

12   practices, procedures, and trainings as it pertains to *non-physician* employees is relevant to her

13   claims. Indeed, she even offers to limit the scope of her request for trainings to "physicians and

14   speaking agents." Dkt. 39, at 13, n.8. Her allegations are that she and other female physicians

15   were disparately treated compared to their male physician colleagues. Therefore, the Court

16   limits areas 1, 2, 5, 6, and 11 to policies, practices, procedures, and trainings in these areas solely

17   as they applied to physicians employed by defendants and the speaking agents for those

18   physicians only. However, the Court declines to restrict these areas further to only those

19   physicians in plaintiff's department, as part of plaintiff's arguments is that she was treated

20   differently from her male physician colleagues across the organization, not merely in her

21   department.

22   Specific to area 1, defendants also separately object that information about implicit bias

23   and harassment procedures is not relevant because plaintiff must show intentional behavior to

24

1    show discrimination and because plaintiff does not allege harassment.  *See* Dkt. 37, at 12.

2    Plaintiff argues that information about implicit bias is indirect evidence of intentional

3    discrimination.  *See* Dkt. 39, at 12.  She does not address harassment, and the Court accordingly

4    strikes "harassment" from this area.  However, the Court agrees with plaintiff that the way that

5    defendants handle implicit bias issues is relevant to claims of intentional discrimination.  *Accord*

6    *Samaha v. Wash. State Dep't of Transp.*, No. CV-10-175-RMP, 2012 WL 11091843, at *4 (E.D.

7    Wash. Jan. 3, 2012) (explaining that expert testimony about implicit bias was relevant to whether

8    an employer intentionally discriminated against an employee).  Defendants have not shown good

9    cause to strike inquiry into implicit bias from area 1.

10        Specific to area 6, the Court notes that plaintiff does not address defendants' objection

11   that requesting information about "any physician's" complaints of discrimination, failure to

12   accommodate, or retaliation during the relevant period is not only overbroad but seeks

13   confidential, proprietary, and sensitive third-party information.  *See* Dkt. 37, at 11.  Although

14   plaintiff asserts that female physicians were systematically discriminated against, she does not

15   otherwise allege a systemic culture of discrimination against disabled persons, and she does not

16   specifically address why these topics would otherwise be reasonably calculated to lead to

17   relevant evidence.  *But see* Dkt. 39, at 2 (pointing to evidence that plaintiff asserts shows that

18   defendants gave male physicians preferential treatment related to their accommodation requests).

19   Accordingly, the Court limits topic 6 by striking the language about disability discrimination.

20       **III.  Definitions of "You" and "Your"**

21   Defendants next take issue with the definition of "you" or "your":

22       "**You**" or "**your**" refers to the Defendants and anyone acting or purporting to act
         on their behalf, including without limitation, current and former employees, agents,
23       investigators, officers, shareholders, attorneys, and representatives.

24

1    Dkt. 38-6, at 5.  They assert that as defined, this requires the deponent to testify about far more

2    than the matters known or reasonably available to the organization (*see* Fed. R. Civ. P. 30(b)(6))

3    and seeks testimony about privileged information.  Dkt. 37, at 13.

4            To the extent that defendants argue that information in the possession of persons such as,

5    for instance, a former employee is necessarily not "reasonably available" to the organization, the

6    Court disagrees.  An organizational spokesperson's responsibility for matters "reasonably

7    available" to the organization can include the responsibility to obtain information from former

8    employees, affiliates, and other sources.  *See Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251

9    F.R.D. 534, 541 (D. Nev. 2008); *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.);

10   *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394 (D.N.J. 2011); *see also Int'l Bhd. of*

11   *Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-CV-02007-MSK-KLM, 2013 WL

12   627149, at *5 (D. Colo. Feb. 19, 2013) ("The majority view appears to be that information is

13   within a deponent's 'control' and thus 'reasonably available' for purposes of Rule 30(b)(6) when

14   the deponent 'either can secure [information] from the related entity to meet its business needs or

15   acted with it in the transaction that gave rise to the suit.'" (Internal citation omitted.)).  The crux

16   of the matter is not the identity of the holder or the location of the information, but whether the

17   organization may obtain that information through reasonable efforts.

18           Thus the Court declines to strike the definition of "you" and "yours" in the notice of

19   deposition.  Of course, regardless of how expansively plaintiff may define "you" and "yours,"

20   the deponent will only be responsible for information that is reasonably available to defendants,

21   and the Court will include language reflecting this requirement of Rule 30(b)(6).  Further,

22   plaintiff acknowledges that the definition excludes information protected by work product and

23   attorney-client privileges.  *See* Dkt. 39, at 13.

24

1

### IV.  Relevant Time Period

2          Defendants object to plaintiff's identification of January 1, 2016 to present as the relevant

3   time period for topics 1–4 and 6 and, as relevant here, that topics 5 and 7–11 appear to seek

4   information from as early as autumn 2010.  *See* Dkt. 37, at 9; Dkt. 38-6, at 5.  Defendants argue

5   that this lawsuit concerns issues beginning in October 2019, when plaintiff was allegedly meant

6   to return to work but sought a disability-related accommodation, and seek to limit the deposition

7   subjects to matters after January 1, 2017.  Dkt. 41, at 5.  The Court disagrees with defendants on

8   this point.

9          Beginning with topics 1–4 and 6, these topics seek information about how defendants

10  dealt with issues such as discrimination, harassment, retaliation, accommodation of disabilities,

11  FMLA leave, call assignment and department allocations, department performance reviews, and

12  physician complaints beginning in January 2016.  *See generally* Dkt. 38-6.  Defendants have not

13  shown good cause to limit this discovery to the period beginning in January 2017.  Plaintiff

14  points to case law that to be "similarly situated" does not require a comparator to be working

15  simultaneously and asserts that even beginning discovery in 2016 covers only half of her

16  employment with Virginia Mason.  *See* Dkt. 39, at 9.  The Court is not persuaded that plaintiff's

17  limitation of the relevant period for certain subpoenas to January 2017 and after is a reason to

18  similarly limit the time period related to the deposition.

19         Turning to topics 5 and 7–11, these topics do not have a circumscribed timeframe and

20  seek information about how defendants handled differentials in compensation between

21  physicians of different genders, plaintiff's positions, plaintiff's own medical conditions and

22  accommodations, plaintiff's concerns about discrimination and other matters forming the basis

23  for her suit, and circumstances surrounding termination of her employment.  *See generally* Dkt.

24

1  38-6.  Certain topics that pertain to the events giving rise to this suit—for instance, plaintiff's

2  leave, efforts for accommodation, and termination—do not require inquiry into matters before

3  2017, so that the Court does not find that these topics present an undue burden for the reasons

4  advanced by defendants.  Moreover, plaintiff clearly brings claims related to discrimination

5  during her employment and before she requested leave, for instance, alleging that she was

6  limited in her employment opportunities on the basis of her gender.  *See* Dkt. 1, at 6, 8.  Thus to

7  the extent that plaintiff seeks discovery relevant to these topics from the onset of her

8  employment, the Court finds that the burden of producing this information relevant to plaintiff is

9  not undue and that the requests are relevant and proportional to plaintiff's needs.  However, the

10  Court does limit the timeframe for topic 5, related to identifying compensation differentials, to

11  information beginning at plaintiff's employment start date, as this area otherwise does not appear

12  to have any defined time period.

13  **V.  "Discovery on Discovery"**

14       Finally, defendants take issue with the following language as requesting impermissible

15  "discovery on discovery":  ". . . identify the completeness of documents produced; the scope,

16  nature, and method of search by you; and the existence, location, organization, electronic

17  creation, duplication, and/or storage of such documents."  Dkt. 37, at 7; *see* Dkt. 38-1, at 5–6

18  (internal formatting omitted).  Defendants point to a King County Superior Court order striking

19  such language from a deposition notice as "overbroad and/or unduly burdensome" (Dkt. 38-7, at

20  3) and similar rulings from district courts.  Dkt. 37, at 8.

21       "Discovery on discovery"—discovery into a party's discovery process—is disfavored,

22  and although not outright prohibited, requests for such discovery are closely scrutinized.  *E.g.*,

23  *Cardinali v. Plusfour, Inc.*, No. 216CV02046JADNJK, 2019 WL 3456630, at *3 (D. Nev. June

24

1   20, 2019).  Generally, courts will only permit such discovery where there is some indication that

2   a party's discovery has been insufficient or deficient.  *Jensen v. BMW of N. Am., LLC*, 328

3   F.R.D. 557, 566 (S.D. Cal. 2019).

4          Here, however, plaintiff has pointed to issues in discovery that justify allowing

5   "discovery on discovery."  Specifically, she points out that defendants appear to have lost an

6   agreement between VMMC and a third-party consultant.  Dkt. 32-16, at 2.  She also points out

7   that defendants have stated that data sources for two former employees—a human resources

8   representative who allegedly denied plaintiff's accommodation request and a physician—are

9   "not reasonably accessible."  Dkt. 40-6, at 3.  Although plaintiff raises these and other issues in

10  her responsive briefing, defendants do not specifically address these deficiencies or provide

11  reasons that such deficiencies do not raise questions about defendants' production in this matter.

12  Defendants make much of the nearly 2,000 pages of documents produced in this matter, but the

13  Court notes that the deposition notice requests discovery on discovery as it relates to documents

14  *relating to each area of examination*.

15         Defendants argue that this language should not be allowed because of the state court

16  order striking it, but that order is not binding on this Court and involves different rules of

17  evidence.  Even if the same principles apply, whether to allow "discovery on discovery" is

18  decided on a case-by-case basis, and it is not clear whether that case involved similar

19  circumstances to those justifying allowing such discovery here.

20         The Court will, however, strike the language about describing the "completeness of

21  documents produced" in each area of examination.  Plaintiff agreed to strike this language and

22  has not explained why she declined to do so in the amended notice of deposition.  *See* Dkt. 38-3,

23  at 3.

24

1

**CONCLUSION**

2      The Court grants in part and denies in part the motion for a protective order.  Dkt. 37.

3 The topics in the amended notice of deposition are limited as follows:

4      (1) Areas 1, 2, 5, 6, and 11 are limited to inquiry about policies, practices, trainings, and

5 procedures that applied (or that also applied) to *physicians* employed by defendants (and those

6 physicians' speaking agents);

7      (2) Area 1 is amended to strike the language about harassment;

8      (3) Area 5 is limited to the time frame beginning with plaintiff's employment start date;

9      (4) Area 6 is amended to strike "disability discrimination";

10      (5) The definition of "you" and "yours" is limited to what is "known or reasonably

11 available to defendants," consistent with Fed. R. Civ. P. 30(b)(6);

12      (6)  Language about identifying the "completeness of DOCUMENTS produced" is

13 stricken throughout the notice.

14      Dated this 24th day of May, 2022.

15

16

_J. Richard Creatura_
J. Richard Creatura
Chief United States Magistrate Judge

17

18

19

20

21

22

23

24