UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ANSTEAD,

    Plaintiff,

v.

VIRGINIA MASON MEDICAL CENTER, *et al.*,

    Defendants.

CASE NO. 2:21-cv-00447-JCC-JRC

ORDER

This matter is before the Court on referral from the District Court (Dkt. 11) and on defendants' motions to compel discovery, impose sanctions, and impose a protective order. *See* Dkts. 63, 65.

The parties to this employment discrimination lawsuit have had repeatedly sought this Court's intervention in discovery disputes, with defendant, in particular, often filing new discovery motions either immediately after the Court's resolution of previous motions, or while its own prior motions are still pending. *See* Dkts. 28, 36, 37, 46, 63, 65, 76. Because defendant did not make a meaningful, good faith effort to meet and confer with plaintiff's counsel to resolve its concerns before filing the instant motions, the Court DENIES defendants' motions without prejudice.

ORDER - 1

**BACKGROUND**

Plaintiff, a physician, sues her former employer related to events that allegedly occurred when she took medical leave to care for her child beginning in October 2018 and extended that leave for her own medical condition—a series of events that culminated with defendants terminating her employment. *See* Dkt. 1. Plaintiff claims violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, asserting after she took leave under the FMLA, defendants failed to reinstate her in a substantially equivalent position and retaliated against her by taking actions including terminating her employment. Dkt. 1, at 4–5. She also alleges that she is disabled under the Washington Law Against Discrimination ("WLAD"), ch. 49.60 RCW, and the Americans with Disabilities Act, 42 U.S.C. § 12101, and alleges that defendants failed to accommodate her return from medical leave, discriminated against her on the basis of her disability by taking actions including terminating her employment, and retaliated against her. Dkt. 1, at 5–6. Further, she alleges that defendants violated WLAD, RCW 49.58.020, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, when they discharged her from employment, otherwise limited her employment on the basis of her gender, and retaliated against her. Dkt. 1, at 7.

Currently, this matter is set for trial beginning April 17, 2023, with discovery to be completed by November 7, 2022. The parties' continuing failure to resolve discovery issues without court intervention has required this Court to issue orders on three occasions. *See* Dkts. 36, 43, 67. As part of its discovery effort, defendants' second set of interrogatories and requests for production ("RFPs") included RFP 35, a request for "all documents in your possession, custody, or control that you obtained from [d]efendants at any time[,]" including "emails or other documents that you forwarded to yourself (or your agents) from any email system of

1  [d]efendants—including all attachments." *See* Dkt. 64-7, at 6. Plaintiff objected to the request as

2  "overly broad" and "unduly burdensome," reasoning that it included "information which has no

3  bearing on this litigation which could potentially exceed 365,000 communications[.]" *Id.* In

4  response, defendant did not address the substance of plaintiff's objection, but expressed concern

5  that plaintiff had exfiltrated an extensive amount of information, including confidential patient

6  health information, from defendants' computer systems by forwarding electronic mail from her

7  work account to her personal account. Dkt. 63, at 5.

8      Meanwhile, the parties have proceeded with four depositions. Dkt. 64, at 3. In each

9  deposition, plaintiff has introduced as exhibits documents that, while responsive to defendants'

10  requests for production, did not display Bates stamps to indicate that they had been produced in

11  discovery, and on two occasions, plaintiff introduced documents that had never been produced at

12  all. Dkt. 64, at 4. While plaintiff attributed these mistakes to the sheer volume of documents

13  involved, and specifically explained the Bates stamp omission was due to the management of

14  deposition exhibits in a separate software application, defendant maintained that plaintiff had

15  done this intentionally for strategic reasons. *See* Dkt. 69, at 2–3.

16      On July 20, 2022, defendants sent a letter to plaintiff's counsel expressing concerns with

17  plaintiff's deposition conduct and requesting assurances that plaintiff would cease withholding

18  relevant documents. Dkt. 64, at 5. Plaintiff, however, maintained that her practices were

19  consistent with the parties' agreed-upon procedure for the production of electronically stored

20  information ("ESI"). On July 27, plaintiff's counsel advised defendant that plaintiff would make

21  an additional document production the following week. Dkt. 64, at 5–6. Given that a deposition

22  was to take place only two days later, however, defendants became concerned that plaintiff

23  would again attempt to introduce documents in the deposition that had not been produced in

24

ORDER - 3

discovery, and again requested to meet and confer on the topic. Dkt. 64, at 6. Before and during the parties' meet and confer on July 28, plaintiff maintained that her conduct had not been improper and noted that no rule required the production of specific documents at specific dates prior to the close of discovery. Dkt. 64-19, at 1; Dkt. 73-4, at 3. Neither party asserts that plaintiff's objections to RFP 35, or defendants' concerns regarding plaintiff's privilege logs, were a subject of discussion. Dkt. 64, at 6; Dkt. 69, at 3–4. Plaintiff, seeking to avoid a situation akin to the prior depositions, then reviewed and produced all possible documents that could be used in the deposition and produced these documents, which totaled over 200 pages, to defendants at 11:39 P.M. that evening. Dkt. 69, at 3. Because the deposition was scheduled to take place at 9:00 A.M. the next day, defendant interpreted this manner of production as further gamesmanship to prevent meaningful pre-deposition review of the documents. Dkt. 64, at 6–7.

The next morning, defendant canceled the deposition, stating that the deponent was required to perform a surgery that "went long unexpectedly." Dkt. 64-21. Defendant also stated that "[d]espite the surgery complications, we would not have allowed [deponent] to proceed as a result of [p]laintiff's discovery abuses[,]" and stated that the deposition would need to be rescheduled. Dkt. 64-21.

Counsel for plaintiff accelerated review of the other documents it believed to be responsive to defendants' request, producing nearly 3,700 pages across 879 documents on August 3rd. Dkt. 69, at 4. Defendant, again, became concerned that these documents indicated the existence of other, unproduced materials that had been exfiltrated from defendant, including patient health information. Dkt. 64, at 4. Plaintiff also produced a new privilege log alongside the tranche of documents, but defendant took issue with the privilege log's omission of the electronic mail address plaintiff used to forward documents to counsel, along with the absence of

any redactions—which defendant took to suggest that plaintiff withheld documents when they could have been produced in redacted form. Dkt. 64, at 7–8. On August 4, defendant filed the motion to compel discovery of all ESI exfiltrated by plaintiff during her employment with defendant and require plaintiff to pay fees and costs associated with bringing the motion. *See* Dkt. 63. A week later, defendant filed a motion for a protective order to require that plaintiff use only documents with Bates stamps in depositions, and produce all documents to be used in depositions ten days in advance. *See* Dkt. 65. Both motions were noted for August 19. *See* Dkts. 63, 65. Both motions have been fully briefed and the matter is ripe for decision.

    *A. Legal Standard*

Parties may obtain discovery on any unprivileged matter that is "relevant to the claim or defense of any party." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). Relevant information is any information "reasonably calculated to lead to the discovery of admissible evidence." *Id.* (internal quotation omitted). District courts have broad discretion to determine relevance and typically construe the concept "broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 12 (1978). The party moving to compel discovery must demonstrate that the information sought is relevant and that the responding party's objections lack merit. *Hancock v. Aetna Life Insurance Company*, 321 F.R.D. 383, 390 (W.D. Wash. July 20, 2017). On the other hand, the party resisting discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Ngethpharat v. State Farm Mut. Ins. Co.*, 2021 WL 425188, at *1 (W.D. Wash. Feb. 8, 2021) (internal quotations omitted). Federal Rule of Civil Procedure 37(a)(1) further provides that

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that

|   |   |
|---|---|
| 1 | the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. |
| 2 | |

Fed. R. Civ. P. 37(a)(1).

*B. Discussion*

As a preliminary matter, plaintiff avers that defendant failed to confer with plaintiff in good faith before moving to compel production of the documents in question, contrary to Fed. R. Civ. P. 37(a)(1). Specifically, plaintiff alleges that defendants failed to confer regarding its overbreadth objection to the request for production and regarding the adequacy of plaintiff's privilege log. Dkt. 68, at 10. Defendant, for its part, asserts that this claim is "untrue and misleading," because "[t]he parties discussed each of Defendants' concerns articulated in the instant Motion" in their July 28 meet and confer. Dkt. 72, at 6. In support of this contention, defendant cites to its supporting declaration, which certifies that the July 28 meet and confer took place, and alleges that "Plaintiff rebuffed every effort by Defendants to resolve this issue in good faith without Court intervention[.]" Dkt. 64, at 6. Defendant also cites to its own electronic mail messages discussing the scope of the meet and confer. Dkt. 64-21.

Defendants' contention is without merit. Defendant has not indicated that it addressed plaintiff's objections to its RFP in good faith during the parties' meet and confer, as opposed to reiterating its prior accusations without accounting for plaintiff's objections or raising the privilege log issue. In addition, defendants' opening brief and reply identify additional concerns that could not have been discussed in the parties' July 28 conference, including the adequacy of plaintiff's August 3rd production and accompanying privilege log. *See* Dkts. 63, 72. Furthermore, for the first time on reply, defendant raises additional concerns regarding plaintiff's undisclosed storage materials and asks the Court for further relief not mentioned in its opening

brief. *See* Dkt. 72, at 6. Defendants' attempt to stretch the scope of the July 28 conference so as to encompass events that occurred afterward is unavailing.

Thus, the Court DENIES defendants' motions to compel, for sanctions, and for a protective order without prejudice. Defendants may re-file these motions at a future date after a good faith attempt to meet and confer has taken place. The parties are reminded that the Court has discretion to award sanctions against both or either the moving party or the non-moving party, if the parties do not attempt to resolve these matters in good faith without Court intervention.

Dated this 23rd day of September, 2022.

J. Richard Creatura
Chief United States Magistrate Judge