UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ANSTEAD,

    Plaintiff,

v.

VIRGINIA MASON MEDICAL CENTER, et al,

    Defendant.

CASE NO. 2:21-cv-00447-JCC-JRC

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER AND ADD COUNTERCLAIMS

This matter is before the Court on defendants Virginia Mason Medical Center and Virginia Mason Franciscan Health's motion for leave to amend its answer to add counterclaims. Dkt. 76.

Defendants seek leave to amend their answer and assert counterclaims under several common law theories, the Defend Trade Secrets Act ("DTSA"), and the Computer Fraud and Abuse Act ("CTAA"). Defendants base each of these proposed counterclaims on evidence obtained in discovery showing that allegedly plaintiff improperly stored defendants' confidential information in a personal electronic mail account and on private hard drives and shared this information with other parties. Plaintiff maintains that any counterclaims would be futile. While defendants' briefing and proposed amended answer states colorable causes of action for breach

of contract, DTSA violations, and breaches of employee fiduciary duties, the same cannot be said for defendants' proposed counterclaims for conversion and CTAA violations. Thus, the Court grants the defendants' motion to amend as to its breach of contract, DTSA counterclaims, and breach of employee fiduciary duties, and denies it as to all others.

Because these counterclaims will require further discovery and briefing, the Court also finds the parties have shown good cause to extend the trial date and all related deadlines by three months. The Court will enter an accompanying scheduling order reflecting the new deadlines.

## BACKGROUND

On July 29, 2021, the Court entered its first scheduling order, setting the deadline for filing amended pleadings on February 18, 2022. Dkt. 16. The current scheduling order, entered July 1, 2022, set the cutoff date for discovery at November 7, 2022, with dispositive motions due by December 6, 2022, and trial set for April 17, 2023. Dkt. 45. On September 1, 2022, defendant filed its motion for leave to amend its answer and assert counterclaims with a noting date of September 16, 2022. Dkt. 76. The motion has been fully briefed and the matter is ripe for decision. Dkts. 76, 78, 80.

## STANDARD OF REVIEW

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the [party] has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Denial of leave to amend on this ground [futility] is rare. Ordinarily, courts will defer consideration of challenges to the merits of a

proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003).

Additionally, "[o]nce a district court has issued a scheduling order, FRCP 16 controls." *Actuate Corp. v. Aon Corp.*, 2011 WL 4916317, at *1 (N.D. Cal. Oct. 17, 2011). Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Defendants must show "good cause" under Federal Rule of Civil Procedure 16 to have the scheduling order amended and, if they succeed in doing so, they must demonstrate that the motion is proper under Federal Rule of Civil Procedure 15. *See, e.g.*, *Wag Hotels, Inc. v. Wag Labs, Inc.*, 2021 WL 4710707, at *1 (N.D. Cal. Oct. 7, 2021) (explaining that these inquiries are not co-extensive). The Court addresses each in turn.

A. Rule 16 Analysis

The Court first addresses Rule 16's "good cause" requirement.

> Good cause may be found to exist where the moving party shows that it diligently assisted the court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the scheduling order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order.

*Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009) (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999)).

Here, neither defendants' brief nor plaintiff's response addresses the issue of whether there is good cause to allow a departure from the Court's scheduling order. Dkts. 76, 78. Nevertheless, the Court is satisfied that good cause exists. Defendants' counsel has diligently participated in the Court's scheduling process, including meeting and conferring with plaintiff and stipulating to continuances of the trial date when necessary. Dkts. 15, 23, 44. The discovery of new evidence that may support additional defenses or counterclaims is an archetypical

example of a "matter[] that could not have reasonably been foreseen" at any earlier stage in the litigation. *Kuschner*, 256 F.R.D. at 687. Finally, defendants acted diligently in bringing this motion less than one month after it obtained the evidence purporting to support the amendments to its answer and counterclaims. Dkt. 76, at 11. In sum, good cause exists.

B. Rule 15(a) Analysis

Having shown good cause for bringing the motion to amend, defendants must establish that the requirements of Rule 15 are met. "[A]bsent bad faith on the part of the movant or undue prejudice to the other parties to suit, discretionary extensions should be liberally granted." *Johnson v. Bay Area Rapid Transit Dist.*, 2014 WL 1395749, at *2 (quoting *Nat'l Equipment Rental, Ltd. v. Whitecraft Unlimited, Inc.*, 75 F.R.D. 507, 510 (E.D.N.Y. 1977)).

In determining whether to grant a motion for leave to amend, the Court considers (1) whether the movant has acted in good faith; (2) whether leave would cause undue delay; (3) whether the opposing party is prejudiced by the amendment; and (4) whether the proposed amendments would be futile. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

Here, plaintiff's sole argument against amendment is the futility thereof. A court may deny leave to amend on the sole basis that amendment would be futile. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Futility is shown when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (citing *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)). While plaintiffs support granting defendants leave to add an affirmative defense incorporating the after-acquired evidence, plaintiffs aver that each

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR LEAVE TO
AMEND ANSWER AND ADD COUNTERCLAIMS - 4

proposed counterclaim would be doomed to failure. Dkt. 78, at 4–12. The Court addresses each proposed counterclaim in turn.

        i. Breach of Contract

A breach of contract claim requires (1) the existence of a contractual duty; (2) a breach of that duty; and (3) damages resulting from the breach. *Nw. Indep. Forest Mfrs. v. Dep't of Labor and Indus.*, 78 Wn. App. 707, 712 (1995). Here, defendants allege that plaintiff assumed a duty to abide by the terms of her employment agreement with defendants, which required her to refrain from "duplicat[ing]," "tak[ing]," or "tak[ing] any part of" defendants' "confidential information." Dkt. 76, at 12. Next, defendants allege that plaintiff exfiltrated data and documents from defendants which, upon production in discovery, was confirmed to contain confidential information and trade secrets. *Id.* at 12–13. Finally, defendants allege damages from plaintiff's "misappropriation—and dissemination—of confidential information and trade secrets, in an amount to be proven at trial." *Id.* at 13.

    Plaintiff argues that defendants cannot show a breach of duty or damages resulting therefrom. However, plaintiff's arguments regarding the occurrence of a breach all appear to rely on different justifications for *why* the documents were exfiltrated; there is no dispute that the exfiltration would consititute breach of the Physician Agreement. Dkt. 78, at 6. Finally, while defendants' claim for damages is somewhat vague, on reply defendants also point to additional discovery, including several hard drives' containing documents that plaintiff has admitted are in her possession, as further evidence that must also be evaluated to determine the extent of its damages. Dkt. 80, at 6. Leave to amend a counterclaim for breach of contract would not be futile under these circumstances.

ii. Defend Trade Secrets Act

To state a cause of action under the DTSA, a party must show that (1) possession of a trade secret; (2) misappropriation of that trade secret; and (3) the misappropriation caused or threatened damages. *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658–59 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)). Here, in a declaration, defendants' attorney alleges that the exfiltrated information obtained in discovery included patient information, budgets, revenue models, financial statements, invoices for services provided to defendants, lists of referral sources for surgery procedures, internal documents, defendants' rates, services and fee schedules, and personnel information as to other employees. Dkt. 77, at 2.

Plaintiff argues that defendant's allegation is not sufficiently specific to state a DTSA claim. In support, plaintiff cites *Sensitech Inc. v. LimeStone FZE*, 548 F. Supp. 3d 244, 261 (D. Mass. 2021). However, that case is inapposite. There, the court dismissed a DTSA counterclaim that alleged merely that the plaintiff had "stolen unlawfully [sic] taken away, concealed and/or copied" defendant's "Confidential Information[.]" *Sensitech*, 548 F. Supp. 3d at 261. Here, defendants have presented several categories of specific confidential information that appear in the documents obtained in discovery and a possibility that more will be uncovered. *See generally* Dkts. 77, 77-3, 77-4. While plaintiff, again, notes that defendants offer "no factual allegations to establish that it suffered economic harm as a result of the supposed misappropriation," the law requires only that a party show the misappropriation *threatened* harm. *InteliClear*, 978 F.3d at 659; Dkt. 78, at 8. In any event, plaintiff fails to show that "no set of facts" could be proved to support defendants' DTSA claim.

### iii. Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act ("CFAA") prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access," as well as "intentionally access[ing] a protected computer without authorization." 18 U.S.C. §§ 1030(a)(2), 1030(a)(5)(C). Defendant alleges that, in exfiltrating documents, plaintiff "intentionally accessed [d]efendants' protected computers, systems, and/or networks without authorization when she exfiltrated Confidential Information and trade secrets." Dkt. 76, at 13. Defendants allege in the alternative that plaintiff "exceeded such authorization as was granted to obtain [d]efendants' information for her own benefit and to defraud [defendant]." *Id.* In support of this allegation, defendants aver that the documents produced thus far "are littered with Confidential Information and trade secrets that [p]laintiff was expressly prohibited from taking with her following her termination[,]" and allege that further information that may be revealed from hard drives currently in plaintiff's control. Dkt. 76, at 13–14.

In arguing against this claim, plaintiff notes the limited purpose of the CFAA:

> The CFAA "is 'an anti-hacking statute,' not 'an expansive misappropriation statute.'" [*Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019)] (citing *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012)). It provides a right of action for a party that suffers one of five categories of harm. *Id.* (citing 18 U.S.C. § 1030(g)). Recently, the Supreme Court concluded that the CFAA "does not cover those who . . . have improper motives for obtaining information that is otherwise available to them." [*Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021).[1]]

Dkt. 78, at 10–11.

Here, plaintiff has the better argument. Taking defendants' allegations as true, they do not show conduct that falls within the ambit of the CFAA. Defendants do not allege that plaintiff

---

[1] Plaintiff did not provide the citation for this quote in her responsive brief. The Court encourages plaintiff to provide citations for legal authority in the future in accordance with Local Civil Rule 10(e)(6).

obtained information that would never have been available to her but for her alleged subterfuge; instead, they allege only that plaintiff had conditional access to confidential information and abused that access. Dkt. 76, at 13–14. As the Ninth Circuit held in *Nosal*:

> If Congress meant to expand the scope of criminal liability to everyone who uses a computer in violation of computer use restrictions—which may well include everyone who uses a computer—we would expect it to use language better suited to that purpose.
>
> [. . .]
>
> Congress did just that in the federal trade secrets statute—18 U.S.C. § 1832—where it used the common law terms for misappropriation, including "with intent to convert," "steals," "appropriates" and "takes." *See* 18 U.S.C. § 1832(a).

*Nosal*, 676 F.3d at 857, 857 n. 3.

Defendants offer no counterargument to plaintiff's construction of the CFAA and point to no controlling authority that would bring plaintiff's conduct within the terms of the CFAA as opposed to broader statutes such as the DTSA. Because defendants have alleged "no set of facts" that would prove liability under this statute, its inclusion as a counterclaim would be futile. Therefore, the Court must deny defendants leave to amend to add *this* counterclaim.

<u>iv. Breach of Employee Fiduciary Duties: Loyalty and Confidentiality</u>

"Common law agency doctrine is relevant to all employment relationships as it defines, among other things, the duties that the employer and employee owe to each other. In such a relationship, the employee or 'agent' owes fiduciary duties to the employer or 'principal.'" *Steven Cole Salon, LLC v. Salon Lotus*, 2009 WL 309196, 148 Wn. App. 1036 (2009). In Washington, to plead a breach of fiduciary duty, a party must show "'(1) the existence of a duty owed [to them]; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach was the proximate cause of the injury.'" *Miller v. U.S. Bank of Washington, N.A.*, 72 Wn. App. 416, 426 (1994) (quoting *Hansen v. Friend*, 118 Wn.2d 476, 479 (1992)).

Here, defendant's allegation that plaintiff exfiltrated electronic mail that was meant to remain in her company account, including messages that contained patient health information, is sufficient to state a claim for breach of loyalty and confidentiality. While plaintiff alleges that the duty of loyalty is implicated only when an employee solicits customers for a rival business of the employer, or otherwise competes with the employer's business, this is only one of several ways in which the duty may be breached. *See* Dkt. 78, at 11–12 (citing *Kieburtz & Assocs., Inc. v. Rehn*, 68 Wn. App. 260, 265 (1992)). Washington courts have recognized broader definitions of the duty. Thus, in *Steven Cole Salon*, a panel of Division One of the Court of Appeals noted:

> [The] "duty to act loyally for the principal's benefit in all matters connected with the agency relationship[]" [. . .] also prevents an employee from using the employer's property, including confidential information, for the employee's or another's purposes.

*Steven Cole Salon*, 2009 WL 309196, at *5 (footnotes omitted) (citing RESTATEMENT (THIRD) OF AGENCY §§ 8.01, 8.05). Here, defendants' proposed amended complaint alleges that plaintiff "exfiltrate[ed] Confidential Information for her own personal gain, transmitt[ed defendant]'s Confidential Information to others, and violat[ed defendants]'s policies and practices regarding patient [protected health information]. Dkt. 77-1, at 26. Defendant also alleges that plaintiff "did not act in the best interests of her employer." *Id.* This implicates the duty of loyalty, including the duty to refrain from misappropriating confidential information, as described in *Steven Cole Salon* and the Restatement (Third) of Agency. While defendants' claim is vaguely worded, the facts alleged point nonetheless to a colorable claim for breach of an employee's fiduciary duties of loyalty and confidentiality, and the Court will not deny leave to add these counterclaims on the ground of futility.

     <u>v. Conversion</u>

Conversion is the "act of willfully interfering with any chattel, without lawful justification, whereby any person entitled is deprived of the possession of it." *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 84 (2001). While defendants have support for the claim that that plaintiff unlawfully took defendants' confidential information and trade secrets, they do not credibly allege that defendants were thereby "deprived of the possession of" information that was simply copied out on emails to plaintiff's personal account, not removed entirely from their servers. Dkt. 77-1, at 26. Thus, allowing defendants to pursue this claim would be futile.

<u>C. Motion for an Extension of Time</u>

Finally, both parties ask the Court, that in the event defendants' motion is granted, they be granted an extension of the standing pre-trial deadlines to accommodate and conduct discovery on the new counterclaims. Dkt. 78, at 13; Dkt. 80, at 5. The parties do not agree on the terms of this extension: plaintiff asks for one months' extension and leave to re-depose witnesses in light of the new counterclaims; defendant avers that one month is "clearly inadequate" and claims review and analysis of the documents will take four months, but also asserts that plaintiff's request to obtain new depositions is improper. Dkt. 78, at 13; Dkt. 80, at 5. Both parties are correct: clearly, in light of both the new counterclaims and the parties' contentious discovery process, one month is inadequate; however, plaintiff is entitled to depose witnesses as part of the discovery process in defending the new counterclaims, and the Court is not persuaded that a four-month extension is necessary. The parties shall have a three-month extension of the trial date, and plaintiff shall be permitted to re-open depositions strictly to the extent that this discovery addresses the new counterclaims.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR LEAVE TO
AMEND ANSWER AND ADD COUNTERCLAIMS -
10

## CONCLUSION

As to its counterclaims for breach of contract, DTSA violations and breach of employee fiduciary duty, defendants have shown good cause under Rule 16 in bringing a motion to amend their answer after the deadline set forth in the scheduling order, and have met Rule 15(a)'s requirements for amendment. However, defendants have failed to show that their counterclaims for CFAA violation and conversion would not be futile. Thus, the Court GRANTS defendants' motion for leave to amend its answer and assert its counterclaims for breach of contract and DTSA violations and DENIES defendants' motion as to its other proposed counterclaims. The Court will address the parties' requested extension of the trial date and all other deadlines in an accompanying scheduling order.

Defendant's motion is granted in part and denied in part.

Dated this 18th day of October, 2022.

J. Richard Creatura
Chief United States Magistrate Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER AND ADD COUNTERCLAIMS - 11