UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ANSTEAD,

        Plaintiff,

    v.

VIRGINIA MASON MEDICAL CENTER, *et al*,

        Defendants.

CASE NO. 2:21-cv-00447-JCC-JRC

ORDER ON DEFENDANTS' MOTION TO QUASH PLAINTIFF'S THIRD-PARTY SUBPOENAS

This matter is before the Court on referral from the district court (Dkt. 11) and on defendants' motion to quash nine of plaintiff's third-party subpoenas. Dkt. 87.

In this employment dispute, plaintiff propounded a subpoena on a third party physician and indicated her intent to serve eight other third parties—current and former employees of the defendants—seeking information to support her claims of discrimination and retaliation. Defendants ask the Court to step in to resolve the parties' dispute over whether plaintiff is entitled to certain documents she seeks via the subpoenas. Specifically, defendants argue that the current and former employees should not be required to provide documents protected by the physician-patient and attorney-client privilege, and also argue that the subpoenas provide an unreasonable time to comply, seek irrelevant information, and are unduly burdensome.

1    The Court finds that the defendants have standing to bring this motion. Considering all of
2    defendants' objections, the Court concludes that defendants have met their burden of showing
3    the subpoenas must be quashed on the bases that they provide an unreasonably short time to
4    comply and seek irrelevant information, thus imposing an undue burden on the third parties.
5    Therefore, defendants' motion is granted.

## BACKGROUND

Plaintiff initiated this action on April 2, 2021 when she filed a complaint alleging that defendants violated her rights under the Family and Medical Leave Act, Washington Law Against Discrimination, the Americans with Disabilities Act, Title VII, and Washington's Equal Pay and Opportunities Act. Dkt. 1 at 5–9. Plaintiff alleges that defendants discharged her or "otherwise limited her employment opportunities based on discriminatory motivations, including exaggerated fears and discomfort about [p]laintiff's disability and unfounded assumptions about how [her] disability would impact her work performance." *Id.* at 6.

The parties have engaged in substantial discovery. *See* Dkt. 29 at 2. However, the parties disagree as to whether plaintiff is entitled to discovery concerning documents within the control of the following physician employees and former employees Craig Murakami, M.D.; Alexander On, M.D.; Craig Miller, M.D.; Jamie Chang, M.D.; Geoffery Dechenes, M.D.; Seth Schwartz, M.D.; Michael Nuara, N.D.; Daniel Zeitler, M.D.; and Stephen Bayles, M.D. Dkts. 87, 88-1. Plaintiff served a subpoena on Dr. Murakami and a notice of intent to file the remaining eight physicians on October 25, 2022. *See* Dkts. 88-1, 88-3. The subpoena served upon Dr. Murakami required a response by midnight on November 1, 2022; plaintiff indicated that the remaining subpoenas would be served by October 31 and require a response by 9:00 A.M. on November 7, 2022. Dkts. 88-1, 88-3.

|   |   |
|---|---|
| 1 | Defendants made objections to the subpoenas and attempted to meet and confer with |
| 2 | plaintiffs without avail. *See* Dkt. 88-5. On October 31, 2022, defendants filed a motion to quash |
| 3 | plaintiff's subpoenas, with Dr. Murakami joining defendants' motion. Dkt. 87. The motion has |
| 4 | been fully briefed. *See* Dkts. 87, 89, 93. |

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), the Court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter. Defendants and Dr. Murakami object to the subpoenas on the bases that (1) the subpoenas did not offer a reasonable time to comply therewith; (2) the subpoenas seek to invade the physician-patient and attorney-client privilege; (3) the subpoenas seek irrelevant information; and (4) the subpoenas impose an undue burden and expense on defendant's employees. Dkt. 87, at 10–14.

A. Standing

The parties disagree on whether defendants have standing to move to quash subpoenas directed at defendants' employees and former employees, but do not dispute that Dr. Murakami has standing to move to quash the subpoena directed at himself.

Plaintiff concedes that defendants have standing to challenge the subpoenas to the extent that they seek privileged information, but asserts that defendants do not have standing to challenge her subpoenas on the grounds of timeliness, relevancy, and undue burden. "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010) (internal quotations and citations omitted). This Court agrees with other district courts in the Ninth Circuit that a party generally lacks standing to object to a subpoena served on a third

party on grounds of relevance or undue burden. *See Tater v. City of Huntington Beach*, No. 8:20-cv-01772-JVS, 2021 WL 4735015, at *3 (C.D. Cal. June 7, 2021) ("Plaintiff's contentions that the Subpoenas seek irrelevant information and are overly broad do not provide her standing to quash the Subpoenas."); *Lee v. Lee*, No. CV 19-8814 JAK, 2020 WL 7890868, at *5 (C.D. Cal. Oct. 1, 2020) ("[O]nly the party to which the subpoena is directed has standing to object to the requests on the grounds that they are irrelevant, vague, overbroad, duplicative, unduly burdensome, etc.").

Defendants disagree, pointing to this Court's holding in *Emara v. Multicare Health System*, 2012 WL 5205950, at *3 (W.D. Wash. 2012), in which a plaintiff served a subpoena seeking records from the defendant's non-party employee, who had originally hired the plaintiff. *Id.* The Court held that the defendant "ha[d] a personal interest in making sure that its current employees, who are not parties to the lawsuit against it, are protected from unwanted interference in their personal lives." *Id.* Holding otherwise, the Court indicated, would allow the plaintiff to "subpoena the prior employment records of every employee he encountered while working [for the defendant], and every employee would be required to intervene in the case in order to protect their privacy interests." *Id.*

Plaintiff's subpoenas raise the same concerns identified in *Emara*. Plaintiff is seeking records of nine individuals who, as in *Emara*, have no connection to the claims or defenses at issue in this case aside from their having worked alongside plaintiff. The subpoenas seek a wide swath of information from other employees' and former employees' emails, and some of the requests do not contain any limitation on the time from which documents must be searched and produced. Defendants have standing to challenge plaintiff's subpoena.

B. Timeliness

Defendants' and Dr. Murakami's first argument—that the subpoena as served on Dr. Murakami does not offer a reasonable time to comply—is well-taken. By serving a subpoena on October 25, 2022, and requiring a response by 12 A.M. on November 1, 2022, plaintiff gave Dr. Murakami only four business days to respond. Courts have consistently held that a period of ten days or less is an unreasonable amount of time to comply with a document subpoena. *See, e.g., Tri Investments, Inc. v. Aiken Cost Consultants, Inc.*, 2011 WL 5330295, at *2 (W.D.N.C. 2011) ("Six total days and four business days is not a reasonable time to comply with ")a subpoena and notice of deposition); *Map Co. v. Lebanese Arak Corp.*, 2017 WL 10434017, at *4 (C.D. Cal. 2017) (ten days to comply with a subpoena was unreasonable and imposed an undue burden on the subpoenaed parties); *BNSF Ry. Co. v. Ctr. For Asbestos Related Disease, Inc.*, 2022 WL 1442854, at *4 (D. Mont. 2022) (ten business days to comply with subpoena was "patently unreasonable" and an "unjustifiably" short time frame); *Angioscore, Inc. v. TriReme Med., Inc.*, 2014 WL 6706898, at *1 n.1 (N.D. Cal. 2014) (nine days was unreasonable time to comply with a subpoena); *Whole Woman's Health v. Paxton*, 2017 WL 4855392, at *3 (D. Haw. 2017) (six days was unreasonable time to comply with subpoena); *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) (one week is unreasonable time to comply with a subpoena); *Bastida v. Nat'l Holdings Corp.*, 2016 WL 7339236, at *2 (W.D. Wash. 2016) (seven days' notice for a subpoena to depose a non-party is unreasonable).

Here, the period of four business days with which Dr. Murakami was given to comply with the subpoena was unreasonable. Plaintiffs assert that they would have been willing to modify the time required to comply with the subpoena if defendants had met and conferred with them prior to filing the present motion. Dkt. 89, at 4. Plaintiff's retroactive invitation to meet and

confer is of little benefit to the Court or to the parties in resolving yet another discovery dispute. Dr. Murakami, through counsel, made efforts to contact plaintiff's counsel regarding his concerns about the subpoena, but his communications apparently went ignored.[1] Given the narrow window in which Dr. Murakami was required to respond, and given plaintiff's nonresponsiveness to counsel's objections, there was likely no other option but to file a motion before the subpoena's deadline passed.

The fact that the subpoena left the parties with no time even to meet and confer about objections thereto underscores just how unreasonable the time frame for compliance was. Insofar as the subpoena seeks production within an unreasonable time frame, the subpoena must be quashed. Further, to the extent that plaintiff intends to serve the remaining eight subpoenas without providing a reasonable time to comply therewith, those subpoenas must be quashed. *See* Dkt. 88-3.

C. Physician-Patient Privilege and Uniform Health Care Information Act

Washington's Uniform Health Care Information Act, chapter 70.02 RCW, forbids a health care provider from disclosing confidential health care information in response to a subpoena unless the requesting party provides advance notice to the patient, or the patient's attorney, and the health care provider and allows the patient at least 14 days to seek a protective order. RCW 70.02.060(1)–(2). The statute defines "health care information" as "information . . . that identifies or can readily be associated with the identity of a patient *and* directly relates to the patient's health care[.]" RCW 70.02.010 (emphasis added).

---

[1] While counsel for defendants and Dr. Murakami provide evidence that they attempted to telephone plaintiff's counsel and left a voice mail message, plaintiff's counsel maintains that no such message existed. *See* Dkt. 88, at 3; Dkt. 89, at 4; Dkt. 95-3, at 2. In any event, defense counsel also stated objections to the subpoena in an email, rendering the purported non-receipt of a voice message superfluous.

In addition, Washington law provides that "a physician . . . shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable the health care provider to prescribe or act for the patient." RCW 5.60.060(4). The physician-patient privilege "prohibits examining a physician in a civil action as to any information acquired in attending a patient without his or her consent." *Carson v. Fine*, 123 Wn.2d 206, 212 (1994); *see also Loudon v. Mhyre*, 110 Wn.2d 675, 679 (1988) ("The relationship between physician and patient is "a fiduciary one of the highest degree . . . involv[ing] every element of trust, confidence and good faith") (internal quotations omitted). Defendants assert that plaintiff's subpoenas, which seek production of documents, text messages, photographs, and medical records "related to patients or patient care," abrogate this privilege and run afoul of the Uniform Health Care Information Act. Dkt. 88-1, at 6–7; Dkt. 92, at 3. However, absent in the subpoena is any demand for information "that identifies or can readily be associated with the identity of a patient,"—the other component of the statute's definition of "health care information." Dkt. 88-1, at 6–7; RCW 70.02.010(17). Thus, plaintiff is correct in asserting that her subpoena does not seek personally identifiable information on health records. Dkt. 89, at 9.

Defendants also interpret plaintiff's responsive brief as admitting that her subpoenas seek "sensitive patient information." Dkt. 94, at 3 (citing Dkt. 89, at 8). However, again, the subpoenas do not seek personally identifiable sensitive information, and the context in which plaintiff uses this phrase makes clear that the "sensitive patient information" is not, itself, the target—rather, it is evidence that such information was present in other physicians' personal devices and email accounts. Dkt. 89, at 9.

Furthermore, the protective order to which the parties stipulated contemplates the production of "material containing, disclosing, or otherwise implicating personal healthcare

information" and provides that this material is to be kept confidential. Dkt. 20, at 2–3. Indeed, defendants have sought—with this Court's approval—similar material from plaintiff in pursuing their counterclaims and affirmative defenses, and invoked the possible presence of patient health information as a reason *for* compelling discovery of such evidence. *See* Dkts. 63, 107. Here, plaintiff does not seek personally identifiable information regarding health records, and defendant has not provided any reason why such information could not be redacted from the documents.

### D. Attorney-Client Privilege

The federal common law of attorney-client privilege applies to federal claims, while state law concerning privilege governs as to claims or defenses for which state law provides the rule of decision. Fed. R. Evid. 501. Here, plaintiff asserts both federal and state law claims. *See* Dkt. 1 at 5–9.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citations omitted). "[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication." *United States v. Ruehle,* 583 F.3d 600, 607 (9th Cir. 2009) (citation omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.*

In the Ninth Circuit, courts use the following eight-part test to determine whether information is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7)

from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Sanmina*, 968 F.3d at 1116 (quoting *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

Here, defendants allege that plaintiff's subpoena targets privileged communications between the non-party employees and defendants' attorneys—specifically, plaintiff's request for "Communications with [d]efendants referring or relating to [p]laintiff, including any notes of oral communications." Dkt. 88-1, at 3. However, defendants fail to allege specific concerns about what, if any, communications require protection. Indeed, defendants do not even allege that any communications took place between the non-party employees and defendants' counsel. Beyond stating that the request invades attorney-client privilege, defendants offer no more than "uncertain assertion[s]" that some of the responsive documents may be privileged, which are insufficient to justify quashing a subpoena. *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966). On reply, defendants offer no further clarification as to their invocation of the privilege.

Moreover, again, the protective order contemplates that privileged information may be produced in discovery and provides for its redaction. Dkt. 20, at 2–3. Defendants do not allege that this order is insufficient to protect confidential information; accordingly, the Court will not quash the subpoenas on this ground.

E. Relevancy, and Undue Burden

Defendants argue that certain requests present in all eight subpoenas propounded on the third parties are improper because they cause an undue burden, "are not relevant to the claims, defenses, and counterclaims in this case[,] and are unlikely to lead to lead to admissible evidence." Dkt. 87, at 9. Specifically, defendants take issue with plaintiff seeking documents, text messages, emails, photographs, medical records, and similar materials on the third parties'

personal email accounts or personal email devices "related to patients or patient care at Virginia Mason." *See, e.g.* Dkt. 88-2, at 11. Plaintiff also seeks communications with plaintiff, communications with defendants referring or relating to plaintiff, and communications with any of plaintiff's medical providers. *Id.*

Pursuant to Federal Rule of Civil Procedure 26(b), litigants may obtain discovery regarding "any non privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Because discovery is broad in scope, discovery requests need only be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* District courts enjoy broad discretion to determine relevancy for discovery purposes and to limit discovery so as to prevent its abuse. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

"'[I]f the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.'"" *Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006) (quoting *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995)). Courts also recognize that discovery must be limited to protect non-parties from harassment or inconvenience. *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

Plaintiff asserts that the information sought is relevant because it relates to defendants' after-acquired evidence defense. This defense allows an employer to avoid liability in a wrongful termination action by showing it would have terminated an employee for wrongdoing had it known of such wrongdoing prior to the termination. *O'Day v. McDonnell Douglas Helicopter Company*, 79 F.3d 756, 759 (9th Cir. 1996). Here, plaintiff specifically maintains that "the handling of confidential and proprietary information by similarly situated employees . . . relates to the credibility—or lack thereof—of [defendant]'s assertion that it would have terminated

[plaintiff] had it known of her practices with regard to sensitive data." Dkt. 89, at 7. On reply, defendants and Dr. Murakami assert that Dr. Murakami is not "similarly situated" to plaintiff, because he has retired, and other physicians' improper possession of patient health information "will not change the fact that [p]laintiff unlawfully took confidential information from [defendants] in violation of her employment obligations, which is a terminable offense as to her." Dkt. 92, at 4.

With respect to Dr. Murakami's first assertion, in identifying a similarly situated or "comparator" employee, an employment discrimination plaintiff must show that they are "similarly situated . . . in all material respects." *Morgan v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Dr. Murakami asserts that his retirement from working for defendants leaves "no possibility he could be treated as a 'comparator' or 'similarly situated' to [p]laintiff for the purposes of the after-acquired evidence defense." Dkt. 92, at 5. However, he fails to indicate whether his retirement occurred before or after plaintiff's termination. Dkt. 92, at 5. Dr. Murakami provides no authority to support the proposition that a former employee cannot be considered "similarly situated" simply by virtue of retiring *after* the alleged discriminatory action took place. Thus, this assertion is unfounded.

However, Dr. Murakami's second assertion—that the information sought has no connection to the after-acquired evidence defense—is well-taken. The Southern District of California recently addressed a similar issue in *Yphantides v. County of San Diego*, 2022 WL 3362271 (S.D. Cal. Aug. 15, 2022). Therein, Yphantides brought a wrongful termination claim against San Diego County ("the County"), but the County asserted an after-acquired evidence defense based on Yphantides's "willful and terminable violations of the County's email usage

protocols." *Id.* at 4. The Court addressed a discovery dispute as to whether evidence of similar violations by alleged comparator employees was relevant so as to be discoverable:

> Plaintiff seeks 'all emails sent, forwarded, cc'd and or bcc'd' by six individuals for a one-year period and argues that the emails are relevant because the identified individuals may have improperly forwarded emails and may not have received any negative consequence. Plaintiff theorizes that if the comparators engaged in the alleged improper email conduct and did not receive a negative employment sanction, the evidence would undermine Defendant's termination decision and/or impact Defendant's [after-acquired evidence] defense. Plaintiff's theory is inapplicable to Defendant's termination decision (and therefore Plaintiff's claims for discrimination, retaliation, and wrongful termination) because Defendant was unaware of Plaintiff's alleged misuse of County emails until after the termination decision. [. . .] Rather, the comparator evidence at issue in this case will be used to address Defendant's after acquired evidence affirmative defense and Plaintiff has not provided any cases indicating that comparator evidence is relevant to that defense. As such, Plaintiff has not established that the requested evidence is "relevant to any party's claim or defense."

*Yphantides*, 2022 WL 3362271, at *5.

Here, as in *Yphantides*, plaintiff seeks to discover evidence that similarly situated employees engaged in proscribed practices involving, among other things, the improper forwarding of emails out of defendants' computer system, arguing that this is relevant to undermining defendants' after-acquired evidence defense. Yet the possibility of similar practices by similarly situated employees would be relevant only if defendants had, in fact, asserted that this reason was *the* reason for plaintiff's termination. This is distinguishable from the situation here, where defendants assert only that plaintiff's improper handling of protected information *would have* been a valid reason to terminate plaintiff had it known of the practice. In the absence of any authority to support her position, plaintiff has failed to show that the requested information is relevant to a claim, counterclaim, or defense in this case. As plaintiff has not shown that the targeted information is relevant, "any burden imposed would be by definition

1  'undue.'" *Del Campo*, 236 F.R.D. at 458. These concerns dictate the Court's decision to grant

2  defendants' motion to quash plaintiff's subpoenas.

## CONCLUSION

Defendants' motion to quash the subpoenas is GRANTED. Because neither party has requested an award of fees or costs in bringing the motion, each party shall bear their own fees and costs.

Dated this 4th day of January, 2023.

J. Richard Creatura
Chief United States Magistrate Judge