UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ANSTEAD,

        Plaintiff,

v.

VIRGINIA MASON MEDICAL CENTER, *et al*,

        Defendants.

CASE NO. 2:21-cv-00447-JCC-JRC

ORDER

This matter is before the undersigned on referral from the District Court and the parties' Stipulated Motion for Protocol Regarding Review and Production of Electronically Stored Information ("ESI") (Dkt. 109). The Court adopts the protocol as set forth herein.

1. Pursuant to the parties' stipulation, the parties shall proceed according to the following Forensics and ESI Protocol ("Protocol") to extract, review, and produce electronically stored information from the twelve hard drives and any other documents and data, of which plaintiff and/or her counsel, retained experts, vendors, agents, or other representatives are in possession, and which defendants allege plaintiff "took" from defendants (collectively, the "Listed Sources"), subject to the date limitations set forth in this Court's December 16, 2022 Minute Order ("Minute Order"). Dkt. 107.

ORDER - 1

2. The parties seek discovery of ESI from the Listed Sources to obtain discovery relevant to the claims, counterclaims, and defenses in this lawsuit. This ESI will include information collected through a forensic examination of the Listed Sources.

3. The following Protocol is adopted pursuant to this Court's Minute Order to resolve the parties' dispute over the proper scope of discovery concerning the Listed Sources and, consistent with the Minute Order, to pursue cost-effective, responsive, and good-faith discovery of ESI using generally accepted e-discovery and computer forensic practices, principles, and tools. The fact that other data sources are not specifically identified in this Protocol is not to be interpreted or construed as a waiver or admission that those sources are not relevant or discoverable.

4. For purposes of this Protocol only, "VMMC Data" shall be construed in the broadest possible sense to include, without limitation, any written, printed, typed, photocopied, videotaped, photographic or recorded matter of any kind or character, whether prepared by plaintiff or otherwise, whether hard copy or electronic, whether stored in the cloud, on hard drives (or other storage media), or otherwise, including, but not limited to, all correspondence, emails (and any attachments), text messages, IM's, financial information, billing information, revenue details, personnel records, compensation details, communications, memoranda, videos, notes, drafts, diaries, calendars, patient information, reports, instructions, lists, forms, files, notebooks, and/or information originally stored on any Virginia Mason-issued device, or in any application, server, software, or cloud based system owned, managed, licensed, or operated by Virginia Mason.

5. To address defendants' request for discovery of ESI from the Listed Sources, Espy Case Solutions ("Espy") shall perform forensic review, imaging, data mapping, and hosting of the Listed Sources, subject to the terms, conditions, and limitations of this Protocol.

6. Within three (3) business days of this order adopting the Protocol, plaintiff will transmit the Listed Sources to the designated Espy representative via hand delivery.

7. Plaintiff's counsel will also concurrently email to Espy all passwords or other keys necessary to obtain access to the Listed Sources as necessary for Espy to perform data extraction, if any. Espy will not share the password(s) with anyone.

8. Upon receipt of the Listed Sources, Espy shall complete a Chain of Custody form to ensure the integrity of the electronic data. Espy shall document the make, model, serial or service tag numbers, peripherals, dates of manufacture, and condition of the systems and media acquired to the extent the information is reasonably available.

9. As soon as reasonably practicable, Espy shall use FTK Imager and/or X-Ways Forensics to create a full disk image for each device (using hardware and software tools that create a forensically sound, bit-for-bit, mirror image of the original hard drives (e.g., EnCase, FTK Imager, X-Ways Forensics, or Linux dd). A bitstream mirror image copy of the media item(s) will be captured and will include all file slack and unallocated space.

10. Espy shall then create a file directory report (i.e. data mapping) that identifies all the files on the Listed Sources and any available data associated with those files. The file directory report shall preserve the folder structure on the Listed Sources to the extent possible. Espy shall redact files with an Accessed Date prior to December 31, 2015 but keep them in the file directory report in redacted format.2 For files with a Created, Modified, or Accessed Date on or after January 1, 2016, the file directory report shall include file name, folder path, file type, and date of last access. For files with an Accessed Date of before January 1, 2016, all information except for the date shall be redacted by Espy. Espy shall provide the redacted file directory report to the parties as soon as reasonably possible.

11. Espy shall then use X-Ways Forensics (or similar program) to sort all files/items on the captured data by Created, Modified, and Accessed Dates. It is the intent and goal of the parties to comply with this Court's Minute Order. To the extent defendants believe that the Created, Modified, or Accessed Dates do not effectively or accurately reflect the date when defendants allege plaintiff took the file/item from defendants, the parties will cooperate to develop additional means of identifying the date when defendants allege plaintiff took each file. If no agreement can be reached, either party may submit the dispute to this Court for resolution after meeting and conferring on the issue.

12. Espy shall then separate all files with a Created, Modified, or Accessed Date on or after January 1, 2016 and perform the work set forth below on those files only. Those files with an Accessed Date of December 31, 2015 or earlier shall be isolated and stored separately and no work shall be performed on those files (such files are referred to herein as the "Pre-2016 Files")3 except by agreement of both parties in writing or Court order, unless those individual files are stored in a .pst or .zip file with a Created, Modified, or Accessed Date on or after January 1, 2016. All Pre-2016 Files contained in a .pst or .zip file with a Created, Modified, or Accessed date on or after January 1, 2016, shall be considered a part of the applicable time period for review.

13. All images and copies of images shall be authenticated by cryptographic hash value comparison to the original media.

14. Without altering any data, Espy shall, as feasible, determine and document any deviations of the systems' clock and calendar settings.

15. The forensic images shall be copied and retained by Espy and not shared with anyone until such time as this Court or both parties request the destruction of the forensic image files in writing.

16. To the extent the files have a Created, Modified, or Accessed Date on or after January 1, 2016, Espy is authorized to extract all data from the Listed Sources, including any data that has been deleted but remains recoverable, or has been corrupted but is partially recoverable, for the search and production purposes described below.

17. Espy will conduct a forensic review of the files on the Listed Sources with an Created, Modified, or Accessed Date of January 1, 2016 or later to determine to the extent possible all dates, locations, and users who have viewed, accessed, downloaded, and/or deleted such files from the original listed sources.

18. Espy is to retain any and all ESI extracted in its custody, control, and safekeeping. Espy will document all work performed to the extent sufficient to reproduce the work as originally performed.

19. As soon as reasonably practicable, Espy will transmit to plaintiff's counsel its data mapping results for the Listed Sources.

20. Within 20 days of receiving those data mapping results, plaintiff's counsel shall provide to defendants' counsel and Espy a "Preliminary Exemption Log" of any data that plaintiff contends should be exempt from production on the bases of attorney-client privilege, spousal privilege, obvious lack of relevance (e.g. personal family photos, recipes, etc.), or any other lawful basis. Espy will also provide plaintiff's counsel any other information needed to determine whether a file, document, or data should be exempt. Plaintiff's Preliminary Exemption Log shall separately describe each individual item withheld (or, if it is not reasonable and cost-

effective to describe each individual item, then each folder—but only if each and every item in the folder is subject to the same alleged exemption, e.g. a folder comprised exclusively of personal photos and nothing else), its author, recipients (if any), its date, the basis for withholding, and a sufficiently detailed description of the item to enable defendants to assess whether the document has been properly withheld.

21. Within 15 days of receiving plaintiff's Preliminary Exemption Log, defendants may challenge plaintiff's withholding of any document or data identified on the Preliminary Exemption Log. The parties must promptly meet and confer in good faith (or attempt to meet and confer in good faith) to resolve any such disputes following defendants' challenges. If the parties are unable to agree, defendants may subsequently request in camera review from this Court of any designations on the Preliminary Exemption Log. The actions described in this paragraph, if necessary, shall not interrupt, delay, or pause any other actions or obligations set forth in this stipulation for data or documents that are not subject to the Preliminary Exemption Log.

22. All remaining data that is not subject to the Preliminary Exemption Log is collectively referred to as the "Proposed Production Set." Espy will create the Proposed Production Set as soon as practicable after receiving plaintiff's Preliminary Exemption Log.

23. The parties shall work collaboratively with Espy to assess whether de-duplication of documents would be a cost-effective, reasonable, and efficient means of reviewing and producing the documents. If the parties agree that de-duplication of documents is worthwhile, they will collaborate in good faith to arrive at a de-duplication protocol that does not impede or alter the deadlines in this Protocol. Should de-duplication occur, a report of de-duplicated data will be generated by Espy and produced to the parties.

24. Before being provided to defendants, the Proposed Production Set will be provided to plaintiff's counsel. Plaintiff will have 15 days after receiving the Proposed Production Set to review the contents and identify any additional data or documents that plaintiff believes should be exempt from production based on the attorney-client privilege, spousal privilege, irrelevance, or some other lawful basis.

25. Each withheld item must be identified on a "Final Exemption Log" that plaintiff's counsel shall transmit to Espy and defendants' counsel. This Final Exemption Log shall separately describe each item withheld, its author, its date, recipients (if any), the basis for withholding, and a sufficiently detailed description of the item to enable defendants to assess whether the document has been properly withheld.

26. Within 15 days of receiving plaintiff's Final Exemption Log, defendants may challenge plaintiff's withholding of any document or data identified on the Final Exemption Log. The parties must promptly meet and confer in good faith (or attempt to meet and confer in good faith) to resolve any such disputes. If the parties are unable to agree, defendants may subsequently request in camera review from this Court of any designations on the Final Exemption Log. The actions described in this paragraph, if necessary, shall not interrupt, delay, or pause any other actions or obligations set forth in this stipulation for data or documents that are not subject to the Final Exemption Log.

27. As soon as practicable after receiving Anstead's Final Exemption Log, Espy shall produce the documents captured by the process set forth above, less documents and data listed on plaintiff's Preliminary Exemption Log, Final Exemption Log, and the Pre-2016 Documents (the "Production Set").

28. After receiving the Production Set, defendants will have 45 days to identify any data or documents that defendants identify as Confidential or Attorneys' Eyes Only pursuant to the Protective Order entered in the case (Dkt. 20).

29. All forensic extractions will be done exclusively by Espy. Espy will preserve the chain of custody at all times.

30. Upon plaintiff's request, the Listed Sources, less VMMC Data, will be returned to plaintiff's counsel within 30 days of Espy's confirmation of deletion. Plaintiff may also identify information belonging to her (which specifically excludes, without limitation, any patient PHI) which she wishes to be returned to her and, if there are no objections from defendants, Espy can return those items and destroy the Listed Sources.

31. All data maintained by Espy will be destroyed within 60 days after the final resolution of this case (including appeals, if any), including the Pre-2016 Files. Espy shall provide the parties with a Certification of Destruction promptly following destruction.

32. All VMMC Data or copies of VMMC Data maintained by plaintiff or her attorneys, agents, representatives, and/or experts will be destroyed within 30 days after the final resolution of this case (including appeals, if any). Plaintiff shall provide defendants with a Certification of Destruction promptly following destruction.

33. No later than January 20, 2023, plaintiff will sign and provide to defendants the attestation attached to the parties' stipulated motion (Dkt. 109-1).

34. Defendants and plaintiff shall be equally responsible (50% each) for the costs for Espy to undertake the work described in this Protocol, without waiving any right they may or may not have to seek reimbursement of such costs. Plaintiff's portion of the shared costs shall be capped at $45,000. Should the costs associated with this protocol exceed a reasonable amount,

the parties will work cooperatively to make adjustments for efficiency, cost-effectiveness, and for compliance with the Civil Rules. Nothing in this protocol shall be interpreted to require either party to incur unreasonable or burdensome costs. Notwithstanding the above, each party shall bear their own attorneys' fees associated with implementing and/or complying with this protocol, including but not limited to fees incurred for review of documents and data. After the Production Set is produced, each party shall pay separately for any costs charged by Espy for work associated with that party's requests for work to be performed.

35. Espy shall separately track its work with regard to files consisting solely of surgical videos and CME materials and the costs of performing work in connection with those files.

36. This Protocol does not include files in plaintiff's personal email account or text messages, which shall be the subject of a separate agreement that is consistent with this Court's Minute Order.

37. Nothing in this Protocol prevents either party from petitioning this Court for a change or modification to this Protocol.

Based on the foregoing, IT IS SO ORDERED.

Dated this 20th day of January, 2023.

J. Richard Creatura
Chief United States Magistrate Judge