UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ANSTEAD,

                    Plaintiff,

        v.

VIRGINIA MASON MEDICAL CENTER,
*et al.*,

                    Defendants.

CASE NO. 2:21-cv-00447-JCC-JRC

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION TO QUASH SUBPOENA
OF JAMIE LITVACK, M.D.

This matter is before the Court on referral from the district court (Dkt. 11) and on non-party movant Jamie Litvack, M.D.'s motion to quash a subpoena directed at herself. Dkt. 113.

In this employment dispute, defendants propounded a subpoena on Dr. Litvack seeking information plaintiff had shared with her regarding her employment with defendants, the present case, and a similar case in which Dr. Litvack was a party. Dr. Litvack asks the Court to step in to resolve the parties' dispute over whether defendants are entitled to certain documents she seeks via the subpoena. Specifically, Dr. Litvack argues that she should not be required to comply because the documents are more readily obtainable from plaintiff; because the documents are irrelevant; because one request is vague and ambiguous; and because some requests seek privileged information.

1    Considering all of Dr. Litvack's objections, the Court concludes that defendants have met

2    their burden of showing that some of their requests must be stricken because of vague language

3    and their demand for privileged documents, but not that the subpoena as a whole must be

4    quashed. Therefore, her motion is granted in part and denied in part.

5                                              **BACKGROUND**

6    Plaintiff initiated this action on April 2, 2021 when she filed a complaint alleging that

7    defendants violated her rights under the Family and Medical Leave Act, Washington Law

8    Against Discrimination, the Americans with Disabilities Act, Title VII, and Washington's Equal

9    Pay and Opportunities Act. Dkt. 1 at 5–9. Plaintiff alleges that defendants discharged her or

10   "otherwise limited her employment opportunities based on discriminatory motivations, including

11   exaggerated fears and discomfort about [p]laintiff's disability and unfounded assumptions about

12   how [her] disability would impact her work performance." *Id.* at 6.

13   The parties have engaged in substantial discovery. *See* Dkt. 29 at 2. However, the parties

14   disagree as to whether defendants are entitled to discovery concerning documents and

15   communications shared between plaintiff and Jamie Litvack, M.D. *See* Dkt. 113, at 2. Dr.

16   Litvack was not an employee of defendants' hospital but, rather, another doctor specializing in

17   the same area as plaintiff who pursued a discrimination claim against her employer, the

18   University of Washington. Dkt. 120-1, at 2. During her deposition on December 14, 2022,

19   plaintiff identified Dr. Litvack as an individual with whom she shared documents and

20   information related to pursuing a gender discrimination claim. Dkt. 114-1, at 9–10. In their

21   respective lawsuits, both plaintiff and Dr. Litvack have been represented by the same law firm.

22   Dkt. 120-1, at 8.

23

24

On January 24, 2023, defendants served Dr. Litvack with a subpoena which, in relevant part, ordered her to comply with the following document requests by February 17, 2023:

1. Documents you obtained from Plaintiff that refer, relate, or pertain to the business operations of Virginia Mason, or that otherwise contain Virginia Mason information, including without limitation information about other Virginia Mason employees.

2. Documents that contain Virginia Mason confidential, sensitive, proprietary, and/or trade secret information, whether received from Plaintiff or otherwise.

3. Documents regarding, reflecting, or pertaining to any damages alleged by Plaintiff, including without limitation alleged economic and/or noneconomic damages.

4. Documents regarding, reflecting, or pertaining to Plaintiff's employment with and/or separation from Virginia Mason, including without limitation discussion of Plaintiff's coworkers.

5. Documents regarding, reflecting, or pertaining to Plaintiff's compensation at Virginia Mason.

6. Documents regarding, reflecting, or pertaining to Plaintiff's compensation at any other employer other than Virginia Mason.

7. Documents regarding, reflecting, or pertaining to Plaintiff's medical condition, benefits, leaves of absence, and/or disability.

8. Any documents or communications between you and Plaintiff that relate, pertain, or refer to alleged mistreatment, discrimination, retaliation, and/or unequal treatment of Plaintiff by Virginia Mason.

9. Any documents or communications between you and Plaintiff that relate, pertain, or refer to alleged mistreatment, discrimination, retaliation, and/or unequal treatment of women and/or disabled individuals in the workplace.

10. Any documents or communications between you and Plaintiff regarding this lawsuit.

11. Any documents or communications between you and Plaintiff regarding the separate lawsuit you brought against the University of Washington.

12. Any documents containing patient [protected health information] and/or personal identifying information, which were provided by Plaintiff.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 3

1

2

       13. Any documents or communications between you and Plaintiff regarding
          surgical scheduling and/or operating room block time.

3

       14. Any documents or communications between you and Plaintiff regarding on-
          call or call scheduling.

4

       15. Any documents or communications between you and Plaintiff regarding
          support staffing levels in a medical setting.

5

Dkt. 114-3, at 10–11.

6

      Dr. Litvack, through counsel, expressed her objections to the subpoena, and on February

7

6, 2023, counsel for defendants and Dr. Litvack proceeded to meet and confer telephonically in

8

an attempt to resolve their dispute. Dkt. 114-1, at 3. Shortly following the failure thereof, Dr.

9

Litvack filed the instant motion on February 7, 2023. Both parties have briefed the issues and the

10

matter is ripe for decision. Dkts. 113, 119, 125.

11

## DISCUSSION

12

      Courts maintain broad discretion to control the discovery process. A party is entitled to

13

discovery into matters "reasonably calculated to lead to the discovery of admissible evidence."

14

Fed. R. Civ. P. 26(b)(1). But a court may limit discovery to protect a party from annoyance,

15

embarrassment, oppression, or undue burden. Fed. R. Civ. P. 26(c)(1). Similarly, a court may

16

modify or quash a subpoena to a third party that presents an undue burden or requires disclosure

17

of privileged or other protected matter. *See* Fed. R. Civ. P. 45(d)(3)(A). "Whether a subpoena

18

imposes an undue burden depends on the relevance of the information requested, and the burden

19

imposed." *Rollins v. Traylor Bros.*, 2017 WL 1756576, at *1 (W.D. Wash. 2017). "The test for

20

'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different from the test

21

under Rules 26 and 34." *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, 385 F. Supp. 3d 863,

22

873 (D. Ariz. 2019) (citations omitted).

23

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 4

1    Here, Dr. Litvack, joined by plaintiff, objects to the subpoena on the bases that: (1) the

2    subpoena seeks information protected by attorney-client privilege; (2) the subpoena imposes

3    vague and ambiguous document requests; (3) the subpoena imposes an undue burden; and (4) the

4    subpoena seeks cumulative information that could more readily be obtained from plaintiff. Dkt.

5    113, at 10–14. Defendants also maintain that Dr. Litvack failed to meet and confer in good faith

6    before filing this motion and that plaintiff does not have standing to support her in bringing the

7    motion. Dkt. 119, at 10, 15.

8         1.   <u>Whether the Meet-and-Confer Requirement Has Been Satisfied</u>

9         "The purpose of the 'meet and confer' requirement is to minimize the use of the Court's

10   limited resources on matters that the parties *should* be able to resolve without court

11   intervention." *Anglin v. Merchants Credit Corporation*, 2020 WL 4000966, at \*2 n. 2 (W.D.

12   Wash. July 15, 2020) (emphasis added). Neither party disputes that a meet-and-confer took place

13   prior to the filing of this motion. Dkt. 114, at 3; Dkt. 119, at 9. Thus, the Court chooses not to

14   evaluate the effectiveness of the parties' conference, and instead turns to the merits of this

15   motion.

16        2.   <u>Whether Standing Exists</u>

17        Next, defendants aver that plaintiff lacks standing to quash the subpoena against Dr.

18   Litvack on any grounds, save privilege. Dkt. 119, at 5. Given that Dr. Litvack, and not plaintiff,

19   has brought the motion to quash the subpoena, the issue of plaintiff's standing is immaterial,

20   regardless of whether plaintiff supports Dr. Litvack in bringing the motion. *See* Dkt. 113. The

21   Court finds defendants' contention to be without merit.

22        3.   <u>Whether the Information Sought is Protected by Attorney Work Product Privilege</u>

23

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 5

1    Dr. Litvack contends that the subpoena must be quashed on the basis that it seeks

2    information protected by attorney work product privilege. Dkt. 113, at 11. Specifically, the

3    subpoena seeks "[a]ny documents or communications between [Dr. Litvack] and Plaintiff

4    regarding this lawsuit[,]" and "[a]ny documents or communications between [Dr. Litvack] and

5    Plaintiff regarding the separate lawsuit [Dr. Litvack] brought against the University of

6    Washington." Dkt. 114-3, at 11. Dr. Litvack raises both the attorney-client privilege and attorney

7    work-product privilege as objections to these requests. Dkt. 113, at 11.

8    Plainly, the attorney-client privilege would not apply to communications between

9    plaintiff and Dr. Litvack, as neither are attorneys. *See United States v. Sanmina Corp*, 968 F.3d

10    1107, 1116 (9th Cir. 2020) (communication must be between attorney and client to invoke

11    attorney-client privilege). However, the Court agrees that documents and communications

12    related to plaintiff's and Dr. Litvack's respective lawsuits are protected as work product. This

13    question is complicated by the fact that the same attorneys represent both plaintiff and Dr.

14    Litvack.  Document Requests 10 and 11 specifically seek communications regarding their

15    respective cases. Dkt. 114-3, at 10. While not every communication between plaintiff and Dr.

16    Litvack is implicated by the work-product doctrine, any communications that contain discussion

17    of their shared case strategies would reveal "attorney impressions" and other insights into the

18    "party's efforts in preparing for litigation." Fed. R. Civ. P. 26(b)(3). The doctrine applies to these

19    communications.

20    The Court's inquiry does not end there, however, because "[t]he privilege derived from

21    the work-product doctrine is not absolute. Like other qualified privileges, it may be waived."

22    *United States v. Nobles*, 422 U.S. 225, 239 (1975); *United States v. Richey*, 632 F.3d 559, 567

23    (9th Cir. 2011) ("The work-product doctrine's privileges are waivable.").

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 6

1     "While the attorney-client privilege 'is designed to protect confidentiality, so that any

2     disclosure outside the magic circle is inconsistent with the privilege,' work-product protection 'is

3     provided against "adversaries," so only disclosing material in a way inconsistent with keeping it

4     from an adversary waives work product protection.'" *Sanmina*, 968 F.3d at 1120. The Ninth

5     Circuit has held that "disclosure of work product to a third party does not waive the protection

6     unless such disclosure is made to an adversary in litigation or 'has substantially increased the

7     opportunities for potential adversaries to obtain the information.'" *Id.* at 1121 (quoting 8 Charles

8     Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2024 (3d ed. 2020)). "Put

9     another way, disclosing work product to a third party may waive the protection where 'such

10    disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the

11    disclosing party's adversary.'" *Id.* (quoting *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235

12    F.3d 598, 605 (D.C. Cir. 2001)).

13           Thus, in *United States v. Sanmina Corp.*, Sanmina submitted a valuation report prepared

14    by a law firm to the Internal Revenue Service as part of an audit. 968 F.3d at 1112. The valuation

15    report cited two memoranda authored by Sanmina's in-house counsel in a footnote. *Id.* The IRS

16    issued a summons for the memoranda, leading Sanmina to object on the basis that the

17    memoranda were protected by attorney-client privilege and the attorney work-product doctrine.

18    *Id.* The Ninth Circuit concluded that Sanmina had waived attorney-client privilege and implicitly

19    waived work-product protection, reasoning that Sanmina's provision of documents that made

20    reference to its attorney memoranda "seem[ed] inconsistent with Sanmina's purported goal of

21    keeping the memoranda secret from the IRS." *Id.* at 1124.

22           Here, plaintiff and Dr. Litvack were two clients of the same law firm and peers in

23    otolaryngology practice, and the sharing of information regarding their respective lawsuits is not

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 7

1    inconsistent in any way with the intent to keep the information secret. Nor was their disclosure to

2    each other likely to substantially increase the opportunities for adversaries to obtain the

3    information. Dr. Litvack's and plaintiff's similar positions as plaintiffs suing their employers for

4    gender-based discrimination—represented by the same attorneys—suggests each doctor had a

5    reasonable expectation that the other would keep such communications and documents

6    confidential. *See Sanmina*, 968 F.3d at 1121 (finding a disclosing party's "reasonable

7    expectation of confidentiality" to be "highly relevant and often dispositive" in finding waiver of

8    the work product doctrine); *United States v. Stewart*, 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003)

9    (finding disclosure of protected work product to criminal defendant's daughter did not amount to

10    waiver because defendant did not "substantially increase the risk that the Government would

11    gain access to materials prepared in anticipation of litigation"). Finding no waiver, the Court

12    holds that the subpoena must be quashed insofar as it seeks protected attorney work product.

13    Thus, Document Requests 10 and 11, which seek communications between plaintiff and Dr.

14    Litvack regarding each doctor's respective lawsuit, are stricken from the subpoena.

15         4.   Whether the Subpoena Imposes Vague and Ambiguous Requests

16         Next, Dr. Litvack argues that the subpoena must be quashed on the basis that some of the

17    requests therein are too vague to provide any notice of what information is sought. Dr. Litvack

18    specifically takes issue with Document Request 2, which seeks all documents that contain

19    "Virginia Mason confidential, sensitive, proprietary, and/or trade secret information, whether

20    received from [p]laintiff or otherwise." Dkt. 114-3, at 10. The subpoena does not provide any

21    definition for the terms "confidential," "sensitive," "proprietary," or "trade secret." *See id.* at 7–

22    9. Defendants offer no response to this argument, simply stating that "[i]t is the recipient's job to

23    locate and produce documents, as Civil Rule 45(e) makes clear." *See* Dkt. 119, at 15. While

24

1  defendants are correct that a subpoena requires the recipient to locate and produce documents,

2  the recipient is not required to guess at or deduce the meaning of terms clearly critical to the

3  scope of the search. The Court orders that Request 2 be stricken from defendants' subpoena on

4  the basis that it is too vague to allow compliance.

5       5.  <u>Whether the Discovery Sought is Relevant and Proportional to the Needs of the Case</u>

6       Next, Dr. Litvack objects to the subpoena on the basis that it imposes an undue burden to

7  produce "marginally relevant information." Dkt. 113, at 9. Dr. Litvack highlights defendants'

8  Document Request 4, seeking "[d]ocuments regarding, reflecting, or pertaining to [p]laintiff's

9  employment with and/or separation from Virginia Mason, including without limitation

10  discussion of [p]laintiff's coworkers[,]" as well as Request 9, seeking "[a]ny documents or

11  communications between you and [p]laintiff that relate, pertain, or refer to alleged mistreatment,

12  discrimination, retaliation, and/or unequal treatment of women and/or disabled individuals in the

13  workplace." Dkt. 114-3, at 10–11. Dr. Litvack asserts that requiring her to "produce any

14  comment, communication, or mention of any employee who worked with" plaintiff, as well as

15  comments "about unequal treatment of women in a different workplace[,]" has little to no

16  bearing on the issues in this case. Dkt. 113, at 9–10.

17       Defendants, in their response, aver that these document requests are directly related to

18  plaintiff's primary complaints of gender discrimination, defendants' after-acquired evidence

19  defense, and defendants' counterclaims, including the counterclaim that plaintiff breached her

20  employment contract by disclosing confidential information. Dkt. 119, at 9. Defendants note that

21  plaintiff indicated, in her deposition, that she forwarded internal information on VMMC provider

22  productivity and nursing distribution to Dr. Litvack "to show her an example of [. . .] how to

23  demonstrate discrimination using graphs." Dkt. 120-1, at 23–24. These documents included

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 9

1  information about billing revenue and names of each physician in plaintiff's working group, and

2  Dr. Litvack's response indicated that she would forward the information elsewhere with

3  plaintiff's approval. Dkt. 120-1, at 27.

4         Dr. Litvack claims that defendants have "not shown how the document in question is

5  'proprietary,' 'confidential,' or 'trade secret' information." Dkt. 125, at 3. In so arguing, Dr.

6  Litvack does not address defendants' position that the messages contained information that was

7  meant to remain within VMMC's computer system, including but not limited to data about other

8  VMMC physicians' billing revenue. Defendants are entitled to examine whether other protected

9  information is present in plaintiff's emails to Dr. Litvack. Such information, if present, would

10  clearly implicate its affirmative defense and counterclaims. Dr. Litvack's contentions to the

11  contrary are unconvincing. On reply, Dr. Litvack attempts to deflect by stating that the number

12  of recipients of exfiltrated information does not matter for the purpose of showing liquidated

13  damages. Dkt. 125, at 4. However, defendants do not seek only liquidated damages—they also

14  seek economic, non-economic, contractual, and exemplary damages. Dkt. 85, at 25. Dr. Litvack

15  has not met her burden of showing that the subpoena should be quashed because it poses an

16  undue burden.

17        6.  <u>Whether the Discovery Would Be Cumulative</u>

18         Next, Dr. Litvack argues that defendants' subpoena should be quashed on the basis that it

19  seeks information already available from a party—the plaintiff. Dkt. 113, at 6. This contention is

20  supported by the fact that any of the information in Dr. Litvack's possession would have

21  necessarily been provided to her by the plaintiff. Further, Dr. Litvack argues that the ESI

22  protocol to which the parties have stipulated will result in the production of all outstanding

23  exfiltrated information.

24

1    Dr. Litvack's reference to the ESI protocol is misleading. That protocol is meant to

2    ensure the timely production of relevant information contained in 12 hard drives which plaintiff

3    admitted were in her possession. *See* Dkt. 111. The language to which the parties stipulated, and

4    which this Court adopted in its order, provides that the protocol "does not include files in

5    plaintiff's personal email account or text messages[.]" *Id.* at 9.

6    Further, while Dr. Litvack may have some basis for contending that the emails could be

7    obtained from plaintiff and not herself, defendants maintain that plaintiff's discovery conduct,

8    thus far, does not support the assertion. In August 2021, in their first set of interrogatories and

9    requests for production, defendants requested documents and communications between plaintiff

10   and any other party regarding the allegations in the complaint, plaintiff's claims against

11   defendants, the facts related thereto, and any instance where plaintiff raised concerns as to unfair

12   treatment by defendants. Dkt. 120, at 2. Plaintiff's response to this request included four email

13   threads between herself and Dr. Litvack. *Id.* In response to a January 2023 request for production

14   of communications between plaintiff and Dr. Litvack, plaintiff produced only one additional

15   email between herself and Dr. Litvack. *Id.* Aside from these five email threads, plaintiff has not

16   produced any other communications between herself and Dr. Litvack responsive to defendants'

17   requests.

18   To be sure, Dr. Litvack's argument that the request is burdensome is not an admission

19   that a great volume of other documents exists. *See* Dkt. 113, at 9–10. Defendants argue that the

20   documents produced thus far tend to indicate that plaintiff and Dr. Litvack had an ongoing

21   dialogue regarding the issues in this case; in particular, defendants note that some emails contain

22   only forwarded documents with no other context. Dkt. 119, at 8. Defendants have reason to

23

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 11

1  believe that other communications may contain more relevant information. The discovery sought

2  is not cumulative in light of plaintiff's prior discovery conduct.

3      Further, and more importantly, whether the information is also in plaintiff's possession is

4  not the complete picture. The possibility that plaintiff not only obtained, but then forwarded,

5  information from defendants' computer system is material to defendants' affirmative defense and

6  counterclaims. The affirmative after-acquired evidence defense is premised on defendants'

7  contention that they would have fired plaintiff had they known of her improper handling of

8  defendants' information. *See* Dkt. 85. If plaintiff obtained protected information and then,

9  through email, disseminated the information to not only Dr. Litvack but other physicians across

10  the country with no way to ensure the security of that information, it would bear directly on this

11  affirmative defense. This would also clearly bear on defendants' alleged damages stemming

12  from its counterclaims. Plaintiff has argued that defendants have not shown damages stemming

13  from their counterclaims; clearly, if defendants can show that sensitive information was not only

14  exfiltrated and kept in plaintiff's possession but shared widely without any safeguards in place, it

15  would change the equation. *See* Dkt. 78, at 8. This factor further precludes the Court from

16  holding that such discovery would be cumulative. Therefore, Dr. Litvack's motion to quash this

17  request is denied.

18                                    **CONCLUSION**

19      Dr. Litvack's motion to quash the subpoenas is GRANTED in part and DENIED in part.

20  Specifically, the motion is granted as to Document Requests 2, 10, and 11, and denied as to all

21  other document requests. Because the Court grants in part and denies in part Dr. Litvack's

22  motion, the Court denies both parties' requests for fees and costs in litigating the motion. Each

23  party shall bear their own fees and costs.

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 12

1      Dated this 16th day of March, 2023.

2

3

4

5      J. Richard Creatura
United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH SUBPOENA OF JAMIE
LITVACK, M.D. - 13