THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMY ANSTEAD, | CASE NO. C21-0447-JCC |
| Plaintiff, | ORDER |
| v. | |
| VIRGINIA MASON MEDICAL CENTER, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion for partial summary judgement. (Dkt. No. 153.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

I.  BACKGROUND[1]

Defendants operate a hospital in King County. (Dkt. No. 1 at 2.) They hired Plaintiff as an otolaryngologist in October 2010. (*Id.*) In October 2018, Plaintiff took a temporary leave from work to care for her child. (*Id.* at 2.) She then extended her leave due to her own medical condition. (*Id.*) She returned to work in October 2019, whereby she requested modifications to

---

[1] Unless otherwise indicated, the facts below are based on allegations contained in Plaintiff's Complaint (Dkt. No. 1).

her schedule and duties. (*Id*.) Defendant denied her request, placed her back on leave, and required her to engage in an interactive process of accommodation with third-party consultants. (*Id*. at 3). Plaintiff then filed a gender discrimination claim against Defendant Virginia Mason's CEO, Gary Kaplan. (*See* Dkt. No. 32- 4.) Subsequently, Defendants terminated Plaintiff for allegedly failing to engage with the interactive accommodation process. (*See* Dkt. No. 32-23.)

    Plaintiff then filed a charge with Equal Employment Opportunity Commission on July 12, 2020, bringing claims under various federal and state labor protection laws. (Dkt. No. 1 at 2.) Then on April 2, 2021, Plaintiff filed this suit alleging violations of both federal and state law. (*Id*.) In October 2022, Defendants amended their answer to include claims for breach of contract, trade secret violations, and breach of loyalty and confidentiality. (*See generally* Dkt. No. 85.) After receiving leave to amend their answer from the Court, (Dkt. No. 149), Defendants amended their answer to include an additional counterclaim for breach of contract. (Dkt. No. 157.) Plaintiff now moves for partial summary judgment on the issue of whether Plaintiff's employment contract contains an unenforceable liquidations clause. (Dkt. No. 153 at 12.)

## II.    DISCUSSION

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts in the light most favorable to the nonmoving party and draw justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.     Discussion**

Plaintiff seeks an order from the Court that the employment contract at issue in Defendants' counterclaims contains an unenforceable liquidated damages provision. (Dkt. No. 153.) Although liquidated damages clauses are generally enforceable, a penalty is not. *See Watson v. Ingram*, 881 P.2d 247, 249 (Wash. 1994) (en banc). In fact, liquidated damages are "often favored, in part because courts recognized that calculating actual damages can be difficult and because parties have a general right to contract as they feel is reasonable." *KIC, LLC v. Zhejiang Dicastal Hongxin Tech. Co.*, 2021 WL 3861635 slip op at 9 (W.D. Wash. 2021).

Courts are "loathe to interfere with the rights of parties to contract as they please between themselves." *Watson*, 881 P.2d at 250. As such, a liquidated damages clause is enforceable if the following two factors are satisfied: "First, the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second, the harm must be such that it is incapable or very difficult of ascertainment." *Id*. at 249. The reasonableness of the liquidated damages provision is judged at the time of contract formation, rather than at the time of breach or trial. *Id*.

Here, Plaintiff asks the Court to dismiss all but one of Defendants' counterclaims on the grounds that the liquidated damages clause in her employment contract is unenforceable. (*See generally* Dkt. No. 153.) The facts related to this employment contract ("Contract") are not in dispute. (Dkt. No. 155-1.) Plaintiff accepted a position with Defendants as a surgeon. (Dkt. No. 153.) The Contract included confidentiality and nondisclosure obligations. (Dkt. No. 155-1 at 8.) And it indicated that violating these obligations could result in termination. (*Id*.) The liquidated damages clause at issue states that, in addition to termination, violating the confidentially and nondisclosure obligations[2] will result in an obligation to pay "liquidated damages an amount

---

[2] For the purposes of summary judgement, the Court views the facts in the light most favorable to the nonmoving party and draws justifiable inferences in that party's favor. *Anderson*, 477 U.S. at 255. Here, this means the Court will presume that Plaintiff did in fact breach the

1  equal to the total of the highest twelve (12) months of net revenue (net revenue calculated as
2  gross charges minus concessions) produced by [Plaintiff] over the last thirty-six (36) month
3  period prior to termination." (*Id*. at 10.)

4     First, as a proto-threshold issue, Plaintiff argues that the Contract was not fairly and
5  understandingly entered into by two equal parties, and therefore requires greater scrutiny. (Dkt.
6  No. 153 at 14–15) (citing S*alewski v. Pilchuck Veterinary Hosp., Inc.*, 359 P.3d 884 (2015)). To
7  support this argument, Plaintiff claims this was her "first job after residency[,]" that she did "not
8  have the same bargaining power as Defendants[,]" that there was "virtually no negotiation
9  between [Plaintiff] and Defendants regarding the Contract[,]" and that she "merely signed the
10 Contract which Defendants presented her with and required her to sign." (*Id*. at 15.) The Court is
11 unpersuaded by these arguments. Prior to accepting this position, Plaintiff had completed
12 medical school, a general surgery residency, an additional specialized residency, and a
13 fellowship. (Dkt. No. 159-12 at 2.) She was also Board Certified by the Academy of
14 Otolaryngology. (*Id*.) By all accounts, including Plaintiff's own admission, (Dkt. No. 159-2 at
15 10), she was a highly skilled, highly trained candidate, and "Washington courts have long held
16 that the fact that unequal bargaining power exists will not, standing alone, justify a finding of
17 procedural unconscionability." *Zuver v. Airtouch Comm.*, 153 Wash. 2d 293, 305 (Wash. 2004)
18 (en banc).

19    Notably, the provisions at issue are straightforward and easy to understand; the fact that
20 Plaintiff did not read the provisions or that Defendants did not highlight them is not dispositive.
21 *See Wallace Real Estate Inv., Inc. v. Groves,* 881 P.2d 1010, 1017 (Wash. 1994) (en banc)
22 ("There is no requirement . . . that the parties specifically discuss anticipated losses from a
23 breach . . . It is sufficient that the amount specified as liquidated damages is a reasonable forecast
24 of the compensation necessary to make the seller whole should the buyer breach.") Similar to the

---

26 confidentiality clause of her contract. The issue then remains whether the liquidated damages clause is enforceable under Washington law.

ORDER
C21-0447
PAGE - 4

contract at issue in *Teuscher v. CCB-NWB*, in this case, "there was no mandated timeframe" to review the Contract, "the terms were clearly disclosed in a relatively simple, short and clear agreement[,]" and Plaintiff "did not have to engage in the services, and could have sought the services elsewhere. She had a meaningful choice in the matter, and she chose to enter into the agreement willingly, without any pressure to do so." 437 F. Supp. 3d 849, 857 (E.D. Wash. 2020). Accordingly, the Court finds that the Contract is procedurally valid.

Moving on to the substantive test for the reasonableness of a liquidated damages clause, the Court first examines whether the amount agreed upon was a reasonable forecast of just compensation for the harm breached. *Watson*, 881 P.2d at 250. A "[d]etermination of whether the test is met depends upon the facts and circumstances of each case." *Walter Implement, Inc. v. Focht*, 730 P.2d 1340, 1343 (1987). In this case, the liquidation clause calculated damages based on Plaintiff's 12 highest revenue producing months in the three years preceding the violation. (Dkt. No. 155-1 at 10.) This calculation is a reasonable forecast of just compensation for the following reasons.

At the time of contracting, it would be reasonable to expect that if Plaintiff violated the confidentiality clause, she would be terminated. Plaintiff argues to the contrary, on the grounds that her termination was not foreseen by the contract nor was it a logical conclusion of violating the confidentiality provision. (Dkt. No. 153 at 17.) She seeks to limit the calculation of potential harms to damages that might be incurred from violating the confidentiality provisions *only*, which contemplates that a violator may still be employed by Defendants. (*Id.*) Therefore, according to Plaintiff, the lost revenue caused by her termination is untethered to the harm (which in her view, is simply a privacy issue). This argument is unpersuasive. While an employee may in fact continue to be employed by Defendants after violating the confidentiality provision, a reasonable forecast assumes that their employment will be terminated. Thus, any potential damages they may incur because of that termination can and must be considered, and is not disproportionate to the anticipated harm caused in the event of a breach.

Therefore, Plaintiff's breach put Defendants in the position of having to replace her. In the interim, Defendants missed out on the revenue produced by Plaintiff's services.[3] Given Plaintiff's highly specialized skill set, it is not unreasonable to assume that it would take Defendants roughly one year to replace her with someone of equal talent and skill.[4] And because this calculation is directly tied to Plaintiff's lost earning potential for Defendants, and not tangential to the circumstances of the potential breach or harm, the Court finds it is a reasonable forecast of harm and it satisfies the first prong of the *Watson* test.

The last issue is whether the actual damages are difficult or impossible to ascertain. *Watson*, 881 P.2d at 250. Given that damages are based on Plaintiff's revenue earning potential for the hospital, it is very difficult to calculate exactly what Defendants *could* have earned if she were still working for them. Courts in this district have conceded that calculating damages like this is an "inherently speculative" process because "it is impossible to see what would have actually happened had the parties acted differently." *KIC, LLC*, 2021 WL 3861635 slip op at 3. Plaintiff argues otherwise, but her purported theory of everything would have to account for variables that are impossible to predict, such as: the shifting cost of medical operations, the demand for certain procedures, the supply of available doctors, patient volumes, economic downturns, healthcare polices, *etc*., and given that the Contract was executed in 2010, Defendants might also have to factor in the effects of a global pandemic, several turbulent presidential elections, and various other force majeures over the span of an unforeseen time. Faced with this impossible task, Defendants (and Plaintiff) chose a calculation which relied on

---

[3] Plaintiff urges the Court to consider her salary and earning potential instead of the revenue she produced for Defendants. (Dkt. No. 153 at 21). This argument is not well received. The damages to be considered are for the non-breaching party, and from their point of view, the issue is one of lost revenue.

[4] The fact that it actually took Defendants' 14 months to find a replacement for Plaintiff, (Dkt. No. 158 at 18), is persuasive in so far in that it is indicative of the reasonableness of a 12-month forecast at the time of contracting. *See Forest Mktg. Enters., Inc. v. State, Dep't of Nat. Res.*, 104 P.3d 40, 45 (2005) (finding liquidated damages clause enforceable when the formula was a reasonable forecast of the injured party's actual loss).

the immediately preceding years as an indicator and proxy for future harm. While this is not a perfect calculation, it is by all means a reasonable one.

Accordingly, the Court finds that the liquidated damages provision in the Contract is not unenforceable as a matter of law. Thus, Plaintiff's ancillary arguments regarding Defendants' counterclaims is STRICKEN as moot.

**III.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion for partial summary judgement (Dkt. No. 153) is DENIED.

DATED this 8th day of June 2023.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C21-0447
PAGE - 7