THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMY ANSTEAD, M.D., <br><br>       Plaintiff, <br><br>   v. <br><br> VIRGINIA MASON MEDICAL CENTER, *et al.*, <br><br>       Defendants. | CASE NO. C21-0447-JCC <br><br> ORDER |

This matter comes before the Court on Defendants' motions to exclude the reports, opinions, and testimony of Plaintiff's expert witnesses Judith Clark (Dkt. No. 170) and Peter Glick, Ph.D. (Dkt. No. 172.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion to exclude expert witness Judith Clark, and DENIES in its entirety the motion to exclude expert witness Peter Glick for the reasons explained herein.

I.   **BACKGROUND**

It is undisputed that Defendants hired Plaintiff as an otolaryngologist in October 2010. (Dkt. No. 150 at 4.) In October 2018, Plaintiff took a temporary leave of absence to care for her child, and remained on leave through October 10, 2019. (Dkt. Nos. 32-10, 32-11.) Five days into Plaintiff's return, she was constructively placed on leave due to Defendants' alleged inability to

accommodate her work schedule and duties. (*Id.*) In March 2020, Plaintiff sent an e-mail to Defendant Virginia Mason's CEO, Gary Kaplan, asking to review the distribution of nursing support within her department, expressing that the lack of a standard process "has allowed for gender discrimination to creep into the decision-making process." (*See* Dkt. No. 32-4.) Defendants terminated Plaintiff's employment in June 2020, citing her extended continuous leave from work and alleged failure to engage in the process to determine reasonable accommodations. (Dkt. No. 32.)

Plaintiff filed suit on April 2, 2021, alleging gender and disability discrimination, along with retaliation. (*See generally* Dkt. No. 1.) She brought claims pursuant to federal and state law. (*Id.*) In preparing her case, Plaintiff retained two expert witnesses: Human resources ("HR") professional Judith Clark, (Dkt. Nos. 170, 183), and Professor of Social Sciences and Psychology, Peter Glick. (Dkt. Nos. 172, 185.) Defendants move to exclude the report, opinions, and testimony of both. (*See* Dkt. Nos. 170, 172.)

## II. DISCUSSION

### A. Legal Standard

A trial court is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Expert testimony is liberally admitted under the Federal Rules of Evidence. *Daubert,* 509 U.S. at 588 (internal quotations omitted).

Expert testimony concerning an ultimate issue is not *per se* improper, as "it is sometimes impossible for an expert to offer his or her opinion on a subject without resorting to language

that recurs in the applicable legal standard." Fed. R. Evid. 704; *United States v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017). However, an expert witness may not offer **conclusory** legal opinions. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis added).

**B.  Analysis**

1. Judith Clark

Plaintiff retained Ms. Clark to "provide the framework for how employers typically engage in the process of accommodating disabled employees and the typical process for response to complaints of discrimination." (Dkt. No. 183 at 2.) Defendants seek to exclude Ms. Clark's report, opinions, and testimony on the grounds that she "impermissibly (1) states legal conclusions; (2) makes credibility judgments; and (3) provides testimony that is both unreliable and unhelpful to the trier of fact." (Dkt. No. 170 at 11.) Plaintiff concedes that Ms. Clark's report and deposition contain some inadmissible opinions, but Plaintiff contends that Ms. Clark should be permitted to testify, with limitations, because (1) it can be properly restricted; (2) she is a qualified expert who offers reliable opinions; and (3) HR practices are central to this case and excluding this testimony would unduly prejudice Plaintiff. (Dkt. No. 183 at 7–11.)

The Court agrees with Plaintiff's position. Although Ms. Clark's report includes legal definitions and offers multiple legal conclusions,[1] her expertise on issues directly related to this case weighs heavily towards including her testimony. For example, Ms. Clark possesses multiple nationally recognized HR credentials and over 40 years of HR experience in a wide range of work environments and industries, including as a hospital HR director. (Dkt. No. 171-2 at 2–4.) Ms. Clark's report also supplied a list of resources she uses to keep up-do-date on employer compliance issues and HR best practices. (*Id.* at 6.) She has served as an expert witness in numerous cases for both plaintiffs and defendants and has shown to be a trusted expert in HR.

---

[1] For example, Ms. Clark's report defines legal terms such as "Qualified Individual" and "Reasonable Accommodation." (Dkt. No. 171-2 at 8.)

(Dkt. Nos. 171-1 at 10 and 171-2 at 19, 21–25.) These qualifications and noted materials provide the foundation of HR best practices knowledge. The Court thus finds that Ms. Clark is a reliable expert based on her specialized knowledge, training, and experience, and she is permitted to rely on her personal experience in addition to the information provided to her. Fed. R. Evid. 703; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999).

Having found Ms. Clark to be a reliable expert,[2] the Court nonetheless finds that much of her report does in fact invade the role of the jury and judge. Therefore, the Court finds it appropriate to limit use of her report and testimony to the following issues: (1) how employers typically engage in the process of returning employees to work from Family and Medical Leave Act ("FMLA") leaves of absence; (2) what the accommodation and interactive process typically looks like, including the proper role of third party administrators; (3) how employers typically engage in the process of accommodating employees with disabilities; (4) examples of reasonable accommodations; (5) examples of what may constitute undue hardship for employers; and (6) how employers typically handle employee complaints of discrimination.

Accordingly, Defendants' motion is GRANTED in part, and Plaintiff is ORDERED to exclude testimony that exceeds the above-stipulated limitations. The rest of Ms. Clark's report, opinion, and testimony is admissible.

2. Peter Glick

Plaintiff retained Peter Glick, Ph.D., to provide "social framework" testimony regarding gender stereotyping, bias, and discrimination. (Dkt. Nos. 173-1 at 5; 185 at 2.) Social framework analysis "has become commonplace (although not without controversy) and can assist the jury's understanding of 'the causes, manifestations, and consequences of . . . stereotyping as well as the organizational circumstances which allow such stereotypes to flourish.'" *Apilado v. North*

---

[2] In the final paragraph of their legal argument, Defendants add that Ms. Clark's opinions are unhelpful because they "[do] not involve sophisticated concepts beyond the knowledge of the average juror." (Dkt. No. 170 at 16.) Defendants provide no basis for this argument, and it will not be considered.

ORDER
CR21-0447-JCC
PAGE - 4

*American Gay Amateur Athletic Alliance*, 2011 WL 13100729, slip op. at 2 (W.D. Wash. 2011) (quoting *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1264 (N.D. Cal. 1997)). Consistent with *Daubert*'s requirements, the Ninth Circuit permits social framework testimony to help prove discrimination. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 601–03, 602 n.22 (9th Cir. 2010), *rev'd on other grounds*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Defendants argue that Dr. Glick's application of social framework theory to this case is inadmissible, based on two cases from the Western District of Texas in which Dr. Glick's expert testimony was excluded: *Mullenix v. University of Texas at Austin*, 2021 WL 4304815 (W.D. Tex. 2021) and *Nikolova v. University of Texas at Austin*, 585 F. Supp. 3d 936 (W.D. Tex. 2022) (*Id.*) However, neither of these cases provide a basis for excluding Dr. Glick's testimony here. In *Mullenix*, the court found Dr. Glick's testimony inadmissible because his application of "specific causation analysis"[3] was not reliable. 2021 WL 4304815, slip op. at 3–7. In *Nikolova*, the court excluded Dr. Glick's testimony for the same reason. 585 F. Supp. 3d at 942–947. Whereas here, Dr. Glick does not conduct specific causation analysis. Rather, he provides "social framework" testimony to educate the factfinder about general principles pertinent to the facts of a case. This is a generally accepted practice. *See, e.g.*, *Apilado*, 2011 WL 13100729, slip op. at 2; *Knox v. Contra Costa Cnty.*, 2022 WL 2290686, slip op. at 32–34 (N.D. Cal. 2022).

Defendants next argue that Dr. Glick's testimony would be unhelpful to the jury because he relied solely on information provided by Plaintiff's counsel for preparation. (Dkt. No. 172 at 13–15.) However, an expert's reliance on information provided by the parties does not necessitate the exclusion of testimony. *See, e.g.*, *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989). Although Dr. Glick only reviewed 13 of 15 documents provided to him before preparing his report, it is clear he reviewed the pertinent documents. (Dkt. No. 172 at 8.) More importantly, Defendants' reliance on *E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370 (S.D.N.Y.

---

[3] Dr. Glick defines specific causation analysis as the practice of applying general, scientifically established principals to a specific case. *Mullenix*, 2021 WL 4304815, slip op. at 2.

2010) and *Childers v. Trustees of the University of Pennsylvania*, 2016 WL 1086669 (E.D. Pa. 2016) suffers the same flaw as their reliance on *Mullenix* and *Nikolova*. The social framework experts in those cases both drew conclusions on ultimate issues. Dr. Glick has not.

Next, Defendants argue that even if Dr. Glick's testimony is relevant and reliable, it should be excluded because it is prejudicial and confusing. (Dkt. No. 172 at 13–15.) The Court disagrees. Dr. Glick's testimony provides an interpretive framework to help the jury understand how discrimination and bias manifest, so that they are equipped to draw informed conclusions on the evidence presented at trial. And unlike the cases relied upon by Defendants, Plaintiff has provided sufficient explanation of how Dr. Glick's testimony will help the jury "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). (*See* Dkt. No. 185 at 2.)

Dr. Glick will provide social framework testimony about empirically validated principles that reveal "when and how stereotypes and bias can lead to workplace discrimination toward women and backlash for claiming discrimination has occurred." (Dkt. No. 173-1 at 8-9.) As previously mentioned, testimony providing general principles relevant to the case is accepted practice, and such testimony would be helpful here. Notably, Dr. Glick has tailored his report to fit the subject matter of this case: gender discrimination, disability discrimination, and retaliation in the workplace. (*See, e.g., id.* at 12–15, 19–28, 58–63, 66–69.) At no point in his report does Dr. Glick conclude that Defendant Virginia Mason Medical Center engaged in any of the behaviors described. The probative value of Dr. Glick's testimony is thus not outweighed by potential prejudice or confusion.

Finally, Defendants argue that testimony regarding "motherhood discrimination" will mislead and confuse the jury. (Dkt. No. 188 at 4–6.) Defendants contend such testimony is irrelevant because Plaintiff has not brought a claim "for discrimination based on her parental or family status." (*Id.* at 4.) They contend that Plaintiff is attempting to bring a new issue "[in] an effort to cram Glick's misleading and prejudicial opinions about motherhood bias into this case." (*Id.* at 5.) Defendants further argue that taking FMLA to care for a child has "nothing to do with

the gender of the person seeking the leave" because gender or "motherhood" is not an element of an FMLA retaliation claim. (*Id.*)

The Court disagrees with Defendants' arguments. Dr. Glick's report offers findings showing differential treatment of mothers who take family leave versus fathers and childless employees, particularly in medicine and specifically among surgeons. (Dkt. No. 173-1 at 28–40.) The subject of motherhood bias is relevant to Plaintiff's FMLA retaliation claim as the statute prohibits employers from discharging or otherwise discriminating against any individual for opposing unlawful practices. *See* 29 U.S.C. § 2615(a)(2). Motherhood bias is also relevant to Plaintiff's gender discrimination claims as motherhood is inextricably linked to gender. As Dr. Glick's report reviews motherhood bias in the context of FMLA, his testimony on the subject is pertinent to the jury's review. It remains the jury's job to determine whether retaliatory intent, along with all other elements of alleged claims, have been proven.

Accordingly, Defendants' motion to exclude the report, opinions and testimony of expert witness Dr. Glick is DENIED.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to exclude Judith Clark's expert witness testimony (Dkt. No. 170) and DENIES in its entirety Defendants' motion to exclude Dr. Peter Glick's testimony. (Dkt. No. 172.)

DATED this 20th day of July 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE